**B.B.M.M., LTD. and Bruce Schwager, Appellants,**

**v.**

**TEXAS COMMERCE BANK–CHEMI-CAL, Meyer Fallas, Fred Fallas and William Cramer, Appellees.**

**No. B14–88–554–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 14, 1989.

L. Rand Dennis, Houston, for appellant.

Robert A. Axelrad, Carmellia C. Boyer, Houston, for appellee.

Before MURPHY, ROBERTSON and SEARS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from an order implementing the sale of land pursuant to a previous judgment. In 1986, a trial court rendered judgment that appellants' property be sold. Subsequently, that case was consolidated into the instant case. An Emergency Motion for Supplemental Order Approving Sale by Receiver was filed by appellees and a hearing was held. Appellants appeal from the subsequent order which appointed a receiver, implemented a bid process, set conditions of the sale and determined the receiver's commission when and if the property was sold. Appellants raise five points of error. We affirm.

Appellant B.B.M.M., Ltd., a Texas limited partnership, executed a $825,000 promissory note made payable to Texas Commerce Bank. Appellant, Bruce Schwager, the general partner of B.B.M.M., Ltd., and the individual limited partners personally guaranteed payment of the note. Appellees are the five limited partners of B.B.M.M., Ltd., (hereinafter "Partners"), and Texas Commerce Bank, (hereinafter "Bank"). The repayment of the $825,000 note to appellee bank was secured by a deed of trust and lien on property commonly known as the Barton's Landing Restaurant in Houston, Texas (hereinafter "the property").

Initially, appellant Schwager instituted suit under cause no. 86–07376 in the 125th Judicial District Court of Harris County, Texas against the limited partners of B.B.

M.M., Ltd. The partners sought the dissolution of B.B.M.M., Ltd. In October 1986, that court appointed a receiver to take charge of the property because the note was in default. That court also entered a sale of the property. No appeal was taken from that judgment, which stated in pertinent parts:

1. Because the court finds that it would be in the best interests of all parties that a receiver be appointed to effect an orderly and satisfactory disposition of the property of B.B.M.M., Ltd., it is ordered that Dale Everett is hereby appointed as receiver for the property owned by B.B.M.M., Ltd. including the real property that is situated at 110–112 Travis Street, Houston, Harris County, Texas.

2. It is further ordered that Mr. Everett shall seek an orderly and satisfactory sale of the property owned by B.B.M.M., Ltd. and attempt to obtain fair market value for the property owned by B.B.M.M., Ltd.

3. It is further ordered that Bruce Schwager, as General Partner of B.B.M.M., Ltd. shall apply the capital contributions of Defendants to the following expenses of B.B.M.M., Ltd.:

a. the monthly installment payment due on that certain promissory note dated December 18, 1984 executed by B.B.M.M., Ltd., payable to Texas Commerce Bank, Chemical;

b. real estate taxes;

c. premiums for casualty, liability and related insurance coverage;

d. maintenance and repairs incurred in the ordinary course of business, and

e. utilities.

4. It is further ordered that Bruce Schwager as General Partner of B.B.M.M., Ltd. shall render a monthly accounting of the disposition of all funds contributed to B.B.M.M., Ltd. by the Defendants hereafter, such accounting to be furnished to the Receiver, the Court and to Defendants by the first day of the month following the month in which contributions are made.

5. It is further ordered that the Court will consider requests of the Plaintiffs and Defendants to enter into any agreements with third parties which would obviate the need for continuation of the receivership or the ultimate forced sale of the property of B.B.M.M., Ltd.

In March of 1987, the bank filed suit for default on the note and for judgment against appellant B.B.M.M., Ltd. and all the individual guarantors of the note. That cause of action, no. 86–07376, was subsequently consolidated into the new cause no. 87–14551.

The bank accelerated the note because of nonpayment of the regular monthly installments. Additionally, other defaults occurred pursuant to the note and the deed of trust, including the non-payment of taxes and the failure to keep insurance on the property.

On March 4, 1988, the trial court entered an order allowing the receiver to sell the property for three hundred seventy-five thousand dollars ($375,000). Appellant Bruce Schwager then filed a petition in bankruptcy on behalf of appellant B.B.M.M., Ltd.. In response to a Motion to Lift the Automatic Stay, filed by appellees, a United States Bankruptcy Court held that the Chapter 11 proceeding was filed in bad faith. The court also ordered the automatic stay lifted to allow appellees to pursue all of their rights and remedies, and to allow the receiver to sell the property in accordance with the order of March 4, 1988 or with other applicable state law.

After the stay was lifted, Joseph E. Huber offered to purchase the property for $410,000. The Bank then filed the Emergency Motion asking the court to permit the receiver to sell the property for the best possible price for cash, so long as the purchase price was equal to or greater than $375,000. The receiver testified that Mr. Huber's offer to purchase the property for $410,000 was the best offer he had received. He further testified that he received only one other offer on the property in the past eighteen months. Subsequent to the written offer to purchase the property made on behalf of Mr. Huber, the partners and the receiver joined the bank in an amended motion for supplemental order to

approve of the sale of the property. Although the joint motion was not included in the record, the court's subsequent order details the method by which the sale process was to proceed:

It is ordered, adjudged and decreed that the subject property will be sold by the receiver for cash and the following persons will perform the following acts in regard to the sale of the same:

1. Dale Everett (hereinafter referred to as the "receiver") shall solicit sealed bids from prospective purchasers on the subject property until 12:00 p.m., Noon, June 13, 1988; and

2. The receiver shall place advertisements within 72 hours of the date of this Order, or as soon thereafter as possible, in the Wall Street Journal and in the Houston Chronicle or the Houston Post, notifying the public that pursuant to Court Order the subject property will be sold for cash and that sealed bids must be received by no later than 12:00 p.m., noon, June 13, 1988. Additionally, notice will be given that in addition to the submission of a written offer to purchase the subject property, the prospective purchaser shall also submit as earnest money a cashier's check in an amount equal to five (5%) percent of his bid, made payable to Houston Title Company, such funds to be held in trust until the determination of the highest bidder which shall occur on June 13, 1988; on June 13, 1988 all earnest money received from bidders other than the highest bidder shall be promptly refunded. The advertisements set out in this paragraph shall be placed in said newspapers for a minimum of one (1) day; and

3. The receiver shall post on the foreclosure bulletin board in the Family Law Center at 1115 Congress, Houston, Harris County, Texas, the same advertisement as required in paragraph No. 2 above; and

4. At 12:00 p.m., noon, or as soon thereafter as practicable on June 13, 1988, the Court will open the sealed bids and determine which bid constitutes the highest bid as soon after 12:00 p.m., noon, June 13, 1988 as practicable the receiver shall execute all documents necessary to convey the subject property to the person who shall have submitted the highest bid for cash, so long as the total purchase price shall be in the amount of Four Hundred Thousand and No/100 ($400,-000) Dollars or more. The closing of the subject property shall take place at Houston Title Company, or such other title company as the receiver might designate; and

5. Should any sale result from a bid received pursuant to the terms of this Order, the receiver shall receive a commission of six (6%) percent of the total purchase price, such amount being the fair and reasonable fee for the receiver's services and reimbursement of out-of pocket expenses in regard to the sale of the subject property; and

6. All proceeds of the sale, after paying the receiver's commission and normal closing costs, shall be turned over to Texas Commerce Bank, N.A., to be applied as a credit to the outstanding indebtedness; and

7. The offer to purchase made by Joseph E. Huber in the amount of Four Hundred Ten Thousand and No/100 ($410,000) dollars may be submitted as a bid pursuant to this Order, if it is amended to conform to the conditions set for herein; and

8. If there are no qualifying bids on June 13, 1988, the receiver shall sell the subject property to the first person after said date that should submit a written offer for Four Hundred Thousand and No/100 ($400,000) dollars or more; and

9. All parties in possession of the subject property shall vacate the same within forty-eight (48) hours of the sale of said property, unless such parties in possession shall enter into a valid agreement with the purchaser whereby the purchaser consents to an additional period of possession; and

10. All parties in possession of the subject property shall fully cooperate with the receiver in regard to allowing the receiver entry onto the subject property

for the purpose of showing the same to prospective purchasers.

■ In the first point of error, appellants argue the court abused its discretion by refusing to allow them to present defenses at a hearing held on the Bank's amended Emergency Motion for Supplemental Order. However, error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected and the substance of the excluded evidence was made known to the court. TEX.R.CIV.EVID. 103. The record does not reflect what defenses, if any, appellants would have presented. Because appellants failed to show the trial court or this court what the excluded testimony would have been, we can find no harm and hence no error. Moreover, our review of the record shows the trial court did not exclude evidence, but rather urged appellants not to present *cumulative* testimony. Therefore, the court did not *prevent* appellants from putting on their case. *See generally* TEX.R.CIV.EVID. 403. Appellants' first point of error is overruled.

■ In the second point of error, appellants argue the court abused its discretion by permitting the Joint Motion for Supplemental Order to be filed as a trial amendment and without notice to appellants. Again, the joint motion was not made a part of the record; therefore error, if any, is waived. *See generally* TEX.R.APP. PROC. 50–52. Point of error two is overruled.

■ Appellants' third point of error concerns the court's abuse of discretion in entering its order approving the sale of the property. Appellants contend there was insufficient evidence to authorize the sale of the property for $400,000. We disagree. The receiver testified that Mr. Hubers' offer was the best one he had received in the eighteen months the property had been for sale. Further, appellants presented no controverting evidence on the property's value. Additionally, the court's order only set a *minimum* $400,000 bid as well as the bid process. We again note that the bid process was set up by the original court's

order and it was not appealed. That order directed the receiver to "seek an orderly and satisfactory sale." In fact, the court order appealed from merely directs the receiver to convey the property to the highest bidder and sets a minimum acceptable bid. It does not *compel* a sale of the property at $400,000. Hence, appellants show no harm and point of error three is overruled.

Appellants allege in their fourth point of error that the court ordered a sale of the property only if all parties agree on its terms. Our review of the order finds no such language. Point of error four is overruled.

■ Appellants contend in their fifth point of error the court abused its discretion in directing payment of proceeds of sale to Texas Commerce Bank and setting a 6% commission on the sale to the receiver. We initially note that the trial court was only implementing the earlier judgment which ordered the property sold. Additionally, the bank held a first lien note and deed of trust on the property. Texas courts have long recognized that the proceeds of mortgaged property sold by a receiver are to be applied first to the principal and interest due to the mortgagee. *Houston Ice & Brewing Co., v. Clint,* 159 S.W. 409, 416 (Tex.Civ.App.—San Antonio 1913, writ ref'd.); *Hayes v. Gardner,* 40 S.W.2d 917, 919 (Tex.Civ.App.—Dallas 1931, no writ.). Hence, the court did not abuse its discretion in directing payment of sale proceeds to the mortgagee of the property to the extent that their interest may appear. *St. Louis Trust Co., v. Texas Southern Railway Co.,* 59 Tex.Civ.App. 176, 126 S.W. 306, 307 (1910, no writ).

■ We further find the receiver's fee is measured by the value of his services rendered. The results which are accomplished by the receiver must be considered in determining a reasonable fee. *Bergeron v. Sessions,* 561 S.W.2d 551, 553 (Tex.Civ.App.—Dallas 1977, writ ref.d n.r.e.). Until the property is sold and a final report and accounting has been filed, the trial court cannot accurately determine the results achieved by the receiver. *Bergeron,* 561 S.W.2d at 553. As the trial court in the

instant case has not given the receiver any interim fees, and cannot determine the total value of the receiver's fee until the property is sold, the court's order is interlocutory in regards to receiver fees and not appealable. *Bergeron*, 561 S.W.2d at 553. Accordingly, appellants' fifth point of error is overruled.

The judgment of the trial court is affirmed.