# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00444-CV

**Gary L. Moyer, Appellant**

**v.**

**Marsha Ann Moyer, Appellee**

FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 00-15120-FC2-277, HONORABLE DERWOOD JOHNSON, JUDGE PRESIDING

## O P I N I O N

This is an appeal from an order granting turnover relief and appointing a receiver and master in chancery who had participated in the underlying action as a testifying expert. In the underlying action, appellee Marsha Ann Moyer was awarded a divorce from appellant Gary Moyer, actual damages for intentional infliction of emotional distress, and punitive damages.[1] Gary did not supersede the judgment. It is undisputed that, following the verdict, Gary assigned property of his wholly-owned corporation to a pair of newly-created foreign limited partnerships in which he had controlling interests; he also assigned certain real property from the corporation to himself individually and proceeded to claim it as his homestead. Based on evidence of these transactions, Marsha obtained the order on appeal in this proceeding.

---

[1] Gary has appealed this judgment, which is presently pending in Cause No. 03-03-00751-CV in this Court.

In eight issues, Gary argues that the district court abused its discretion because (1) the turnover relief ordered by the district is insufficiently specific regarding the property to be turned over and extends to exempt property; (2) the appointed receiver had an interest in the underlying litigation and the district court improperly awarded him fees without a showing of reasonableness or completed work; and (3) there was no showing of good cause to appoint a master in chancery, the appointee had an interest in the litigation, and was not a licensed attorney. We will reverse and remand the order as it pertains to the turnover, the receiver appointed, and the receiver's fee. We are without jurisdiction to consider the issues related to the appointment of a master in chancery.

**BACKGROUND**

In this cause, Marsha sought a range of remedies to aid in enforcing her judgment against Gary in the underlying action. The district court heard evidence that, around the time the court rendered judgment on the jury's verdict, Gary undertook a series of transactions that had the effect of:

- transferring the business assets of his wholly-owned Texas corporation, Paper Resources International, Inc.—including office equipment, intellectual property, tax credits, and accounts receivable—to a newly-created Alaska limited partnership, Paper Resources International L.P., which Moyer subsequently designated as the successor to his Texas corporation;

- transferring certain land and assets "pertinent to the land"—including livestock, horses, a sprayer, a truck, trailers, heavy equipment, and a welder—from the Texas corporation to a newly-created Alaska limited partnership, Florence Investments L.P.;

- transferring the Texas corporation's 100 acres of remaining land to Gary individually, who proceeded to claim the property as his homestead; and

- placing control of both limited partnerships in Gary, who had 98% limited partnership interests in both,[2] as well as 100% membership in each limited partnership's general partners, a pair of newly-created West Indies limited liability corporations. The general partner of Paper Resources International L.P. was Paper Resources Management, L.L.C.; the general partner of Florence Investments L.P. was Florence Investments Management, L.L.C.

The principal place of both limited partnerships was the same Florence, Texas, address as the original Texas corporation.[3]

Although admitting to an earlier utterance that he had wanted to "preserve something for myself," Gary insisted that there was nothing "illegal or immoral" about these transactions. He emphasized that, in the underlying action, the issue of whether Paper Resources International, Inc. was his alter ego had been submitted to the jury, which had found in the negative. Gary concluded that because only he, and not Paper Resources International, Inc., was a judgment debtor, nothing prevented the company from restructuring and transferring its assets so as to avoid entanglement with Gary's personal legal problems. As he put it, "Paper Resources is and was a separate entity from me, and I had a responsibility to do the best I could by those companies to keep them from being subject to anything that would go wrong with me."

Marsha characterizes the transactions as a "pattern of shifting funds and assets to avoid execution" on the unsuperseded judgment. At the close of the hearing, the district court granted the remedies Marsha had requested, including (1) a temporary injunction barring Gary from transferring assets related to his businesses; (2) a charging order against Gary's interests in the two

---

[2] Gary's daughter, Annette Capriotti, was assigned a one percent interest in each limited partnership. The remaining one percent of each limited partnership was held by its general partner.

[3] This may explain the references to Florence in the names of some of the new entities.

3

limited partnerships, *see* Tex. Rev. Civ. Stat. Ann. art. 6132a-1 (West Supp. 2004-05); (3) a turnover order; and (4) the appointment of Steve Pena, an accountant who had served as Marsha's damages expert in the underlying case, as both receiver and master in chancery, and awarding him fees. Gary largely did not contest either the injunction or the charging order, and neither are at issue on appeal,[4] but contends that the district court abused its discretion with regard to other relief it ordered.

## DISCUSSION

Gary brings eight issues in which he challenges the district court's order of turnover relief, its appointment of Pena as receiver, its fee award to Pena, and its appointment of Pena as master in chancery.

**Standard of review**

We review a turnover order, an appointment of a receiver, and an award of fees to the receiver for an abuse of discretion. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Roebuck v. Horn*, 74 S.W.3d 160, 163 (Tex. App.—Beaumont 2002, no pet.); *Stanfield v. Stanfield*, No. 09-99-00453-CV, 2000 Tex. App. LEXIS 6743, at *14 (Tex. App.—Beaumont 2000, no pet.) (not designated for publication); *Rusk v. Rusk*, 5 S.W.3d 299, 306-07 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *see also Fortenberry v. Cavanaugh*, No. 03-04-00816-CV, 2005 Tex. App. LEXIS 4665, at *5-6 (Tex. App.—Austin 2005, no pet. h.) (mem. op.); *Schulze v. Cap Collection JV7*, No. 03-03-00390-CV, 2004 Tex. App. LEXIS 8454, at *8 (Tex. App.—Austin Sept. 23, 2004, pet. filed) (mem. op.). A trial court may be reversed for abusing its discretion if we find

---

[4] The record does not indicate whether this or any other injunctive relief is presently in effect.

4

that it acted in an unreasonable or arbitrary manner, without reference to any guiding rules and principles. *Beaumont Bank, N.A.*, 806 S.W.2d at 226.

**Turnover relief**

Gary asserts in his first issue that the district court's turnover order constitutes an abuse of discretion because it fails to identify specific non-exempt property to be turned over. In his second, somewhat overlapping issue, he contends that the turnover order impermissibly extends to exempt property. A "turnover" order is a statutory procedural device through which judgment creditors may reach assets of a judgment debtor that are otherwise difficult to attach or levy by ordinary legal process. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West Supp. 2004-05); *Beaumont Bank, N.A.*, 806 S.W.2d at 224. To obtain relief under the "turnover statute," section 31.002 of the civil practices and remedies code, a judgment creditor must prove (1) the judgment debtor owns property, including present or future rights to property; (2) the property is not exempt from attachment, execution, or seizure; and (3) the property "cannot readily be attached or levied on or by ordinary legal process." Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a). The district court made the following findings regarding these statutory elements:

1. Defendant owns property described as 100% membership interest in Paper Resources Management, L.L.C. and 100% membership interest in Florence Investments Management, L.L.C. Paper Resources Management, L.L.C. is purportedly the general manager of Paper Resources Limited Partnership, and Florence Investments Management, L.L.C. is purportedly the general manager of Florence Investments Limited Partnership. Paper Resources Limited Partnership is purportedly the successor of Paper Resources International, Inc., of which Defendant is the sole owner, officer, and director;

2. These properties are not exempt under any statute from attachment, execution or seizure for the satisfaction of liabilities.

5

3. These properties cannot readily be attached or levied upon by ordinary legal process.

Upon finding that the elements of section 31.002(a) are satisfied, a trial court has discretion to issue a range of remedies, including ordering the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control to a designated sheriff or constable for execution, and "appoint[ing] a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." *Id*. § 31.002(b). Here, the district court appointed Steve Pena as receiver and vested him with the following powers:

> all the power and authority to take possession of all nonexempt property of Gary Moyer that is in the actual or constructive possession or control of Gary Moyer, including but not limited to all property incidental to or associated with the daily operations of Paper Resources International, Inc., Paper Resources Management, L.L.C., and Florence Investments Management, L.L.C., including but not limited to all cash, accounts receivable, notes receivable, promissory notes, drafts and checks, monies on deposit in financial institutions, financial accounts (bank accounts), certificates of deposit, money market accounts, accounts held by any third party, stocks, all securities, all real property deeds to real property, titles to automobiles or other vehicles, boats, planes, all safe deposit boxes or vaults and the contents therein, monies received by the Defendant in the form of checks, cash or credit card payments or receipts; any and all causes of action or chooses of action, contract rights whether present or future; and all furniture, fixtures, equipment, supplies and inventory, and all documents, books and records related to any of the herein described property (including financial records) that are in the actual or constructive possession or control of Gary Moyer; and to pay the proceeds to Plaintiff to the extent required to satisfy her judgment (or the balance due if the judgment has been partially satisfied) which amount includes principal, prejudgment and postjudgment interest, together with costs.

Gary urges that this order impermissibly fails to identify specific non-exempt property or rights thereto that he possessed that would enable him to comply with the order, but merely employs a

6

"laundry list" of broad property categories with little or no relationship to the evidence. In response, Marsha contends that it is sufficient that the order purports to be limited to "nonexempt property of Gary Moyer that is in the actual or constructive possession or control of Gary Moyer," and identifies "all property incidental to or associated with the daily operations of Paper Resources International, Inc., Paper Resources Management, L.L.C., and Florence Investments Management, L.L.C." While herself characterizing the remainder of the paragraph as a "laundry list," Marsha suggests that the district court did not abuse its discretion in employing broad categories in the face of evidence that Gary had been "engaged in a complicated maneuvering of assets that had converted previously non-exempt assets to homestead and that has made the execution on assets difficult."

Gary's argument finds support in decisions invalidating turnover orders in whole or part for lack of specificity concerning the property to be turned over. *See Newman v. Toy*, 926 S.W.2d 629, 631-32 (Tex. App.—Austin 1996, writ denied); *Ex parte Prado*, 911 S.W.2d 849, 850 (Tex. App.—Austin 1995, no writ); *see also In re Montgomery*, 138 S.W.3d 569, 572-73 (Tex. App.—Beaumont 2004, pet. denied); *Roebuck v. Horn*, 74 S.W.3d 160, 163-65 (Tex. App.—Beaumont 2002, no pet.); *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 324 (Tex. App.—Dallas 1997, writ denied); *Bergman v. Bergman*, 828 S.W.2d 555, 557 (Tex. App.—El Paso 1992, no writ). Marsha attempts to distinguish these decisions as involving turnover orders that, due to their vagueness of lack of specificity, encompassed exempt property or third-party property, or effected other unlawful results that she asserts are not present here. In fact, some of these decisions have appeared to link the specificity requirement to these purposes. Some emphasize that turnover orders are in the nature of mandatory injunctions and are enforceable by contempt, and thus implicate due process concepts. *Bergman*, 828 S.W.2d at 557 (order "must be definite, clear

7

and concise, leaving the person enjoined in no doubt about his duties, and should not be such as would call on him for interpretations, inferences or conclusions") (citing *Schultz v. Fifth Judicial Dist. Court of Appeals*, 810 S.W.2d 738 (Tex. 1991), and *Gulf Oil Corp. v. Walton*, 317 S.W.2d 260, 264 (Tex. Civ. App.—El Paso 1958, no writ)); *see also Burns*, 948 S.W.2d at 324 (same). Others acknowledge that this requirement aids in ensuring that the turnover order does not extend to exempt property or property of third parties. *Roebuck*, 74 S.W.3d at 163-64 (broad turnover order improperly extended to assets owned in whole or part by third parties); *Burns*, 948 S.W.2d at 326-27 (non-specific order to turn over "cash, money orders, checks . . . in any form and in anyone's possession which Burns beneficially owns or may own in the future" improperly extended to exempt and currently nonexistent property). Similarly, we have recognized that a turnover order requiring a judgment debtor to make cash payments without specifying the non-exempt asset from which the payments are to be derived effectively forced the judgment debtor "to choose between work [to earn the required payment] and jail," and held that "the imposition of such a choice is beyond the power of the [turnover] statute." *Ex parte Prado*, 911 S.W.2d at 850.

But the specificity requirement is not merely a means to these ends. Instead, it derives from the statutory requirements and limitations governing turnover relief. To meet the requirements of section 31.002, the court's order must be specific in both identifying the non-exempt property that is susceptible to turnover relief and in tailoring the turnover relief to that property. As the *Bergman* court explained:

> In the *Schultz* opinion, the [Supreme] Court referring to the turnover statute said: The statute requires a factual showing that the judgment debtor has non-exempt property that is *not* readily subject to ordinary execution. . . . Upon proof of the necessary facts, it authorizes the trial court to order affirmative action by the

8

judgment debtor and others to assist the judgment creditor in subjecting such non-exempt property to satisfaction of the underlying judgment.

828 S.W.2d at 557 (emphasis in original). The court of appeals then elaborated that

this language certainly mandates that the trial court is to have a hearing, determine what specific assets are exempt, and what assets are subject to the court's order and then to direct the payment as the court determines is proper. If the statute requires a factual showing of non-exempt property, the court has to be acting with regard to certain specific property that it will direct be turned over to satisfy a judgment. It is not to be left to the debtor to determine what property that person has and whether it is exempt. Otherwise, there would be no need for any 'factual showing' by 'proof of the necessary facts' as required by [the supreme court's] opinion.

*Id*.

The turnover order in this case does not comply with section 31.002. *See* Tex. Civ. Prac. & Rem. Code § 31.002. It compels Gary to turn over property beyond the sole non-exempt property the district court found that he possessed and controlled and that "cannot readily be attached or levied upon by ordinary legal process," his "100% membership interest in Paper Resources Management, L.L.C. and 100% membership interest in Florence Investments Management, L.L.C." Moreover, the list refers to property items whose existence—whether controlled by Moyer, Paper Resources International, Inc., or any other entity—is not supported by the evidence. For example, there was no evidence presented regarding any "boats," "planes," and "safe deposit boxes or vaults and the contents therein." In *Newman*, we invalidated a portion of an order requiring turnover of money receipts from a podiatrist's "independent work as a sole proprietor" where there was no evidence that he, in fact, received any sums from a sole proprietorship and, "in all events, the order omit[ted] to identify specifically such property." *Newman*, 926 S.W.2d at 631-32.

9

Some of the categories, as Marsha observes, do appear to encompass property whose existence was established in the evidence. But the mere fact that general property categories in a turnover order coincide with some actual existing property is insufficient to cure the order's lack of specificity. The Beaumont Court of Appeals invalidated a similar turnover order that "did not make any specific reference to the assets that were proved during the hearing" but referred generally to "books," "stocks," "titles to automobiles," "cash," "other vehicles," and "real property/deeds to real property." *Roebuck*, 74 S.W.3d at 163. Although some of these categories included specific non-exempt assets of the judgment debtor, the court reversed and remanded the order in its entirety because "[a] reference to broad categories of assets does not constitute a reference to specific assets that is required in a turnover order" and the order contained "numerous generalized categories of assets without any supporting proof as to their ownership by [the debtor]." *Id.*

We are similarly persuaded that we must reverse and remand the turnover order in this case. Its fatal lack of specificity cannot be justified, as Marsha urges, by evidence of Gary's "complicated maneuvering of assets that had converted previously non-exempt assets to homestead and that has made the execution on assets difficult." Even if these are valid concerns, we are not permitted to ignore the restrictions and limitations the legislature has placed in section 31.002. We note that injunctive relief is available to prevent judgment debtors from dissipating or converting assets and that, in fact, the district court granted such relief here. Nor did Gary's transfer of assets appear to create uncertainty regarding the nature of the assets at issue. To the contrary, the evidence clearly identified several specific items of business assets, real property, and assets "pertinent to the

10

land." To the extent that Marsha desires greater clarity concerning the nature of Gary's property, she may seek it through post-judgment discovery.[5] *See* Tex. R. Civ. P. 621a.

We sustain Gary's first issue, and reverse and remand the turnover order for further proceedings consistent with this opinion. We thus do not reach Gary's second issue in which he contends the current order improperly extends to exempt property, but trust that the district court, while ensuring the required specificity regarding non-exempt property, will ensure that any further turnover orders comply with this limitation.

**Appointment of Marsha's expert as receiver**

The receiver appointed by the district court, Steve D. Pena, a certified public accountant, had been Marsha's retained damages expert in the underlying case. Gary contends that Pena's appointment was an abuse of discretion because Pena has an interest in the matter. We agree that the district court abused its discretion in appointing Pena.

The parties agree that the conflict-of-interest standard in section 64.021 of the civil practice and remedies code governed the district court's receiver appointment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 64.021 (West Supp. 2004-05). Section 64.021 provides, in relevant part, that a person appointed as a receiver for property located in this state must not be "a party, attorney, or other person interested in the action for appointment of a receiver." *Id*. On appeal, the parties' dispute focuses primarily on the meaning of "interested *in the action for appointment of a receiver*." (Emphasis added.) Gary contends that Pena, a retained expert who testified on behalf of Marsha in

---

[5] At the turnover hearing, Gary's attorney stated that "not one single piece of post-judgment discovery has gone out." Marsha's attorney argued that post-judgment discovery was not required because Gary "does not get to dictate or choose how I go about collecting on my judgment."

11

the underlying action, would necessarily be interested and biased against him when acting as receiver. Marsha does not dispute that Pena was "interested" *in the underlying action*, but contends that Pena has no interest in the receivership action itself. She adds that she filed "the action for appointment of receiver" under a separate cause number from the underlying divorce and damages suit in which Pena testified. *See id*. § 31.002(d) (judgment creditor may seek turnover relief in either same cause in which judgment was rendered or independent proceeding).

We agree with Marsha that the focus on our inquiry must be whether Pena has a disqualifying interest in "the action for appointment of receiver" in particular, not the underlying action; we may not ignore the language the legislature has deliberately chosen. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994) ("In applying the plain and common meaning of the language in a statute, courts may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning; such implication is inappropriate when legislative intent may be gathered from a reasonable interpretation of the statute as it is written."); *Gonzales v. Concerned Citizens of Webberville*, No. 03-05-00014-CV, 2005 Tex. App. LEXIS 5902, at *14 (Tex. App.—Austin July 28, 2005, no pet. h.); *see also James v. Roberts Tel. & Electr. Co.*, 206 S.W. 933, 935 (Tex. Comm'n App. 1918, judgm't adopted) (stating conflict issue in terms of "[w]hether a receiver who is interested *in the receivership* . . . .") (emphasis added). However, at least where receivers have been appointed prior to judgment, Texas courts have appeared to assume that persons interested in the underlying action would likewise be interested in the receivership. *See O'Ferral v. Coolidge*, 228 S.W.2d 146, 149 (Tex. 1950) (attorney for party was "clearly" disqualified from serving as receiver); *Zanes v. Mercantile Bank & Trust Co.*, 49 S.W.2d 922, 928 (Tex. Civ. App.—Dallas 1932, writ ref'd) (receiver "is an indifferent person, between the parties to a cause,

12

appointed by the court to receive and preserve the property or fund in litigation pendente lite"); *Crawford v. Crawford*, 163 S.W. 115, 116 (Tex. Civ. App.—Texarkana 1913, no writ) ("persons interested in the subject-matter of the litigation or results sought to be attained thereby" prohibited from receivership appointment); *see also Wiley v. Sclafani*, 943 S.W.2d 107, 110 (Tex. App.—Houston [1st Dist.] 1997, no writ) (relying on *Zanes* in addressing standing of receiver to appeal).

However, this case presents the somewhat different question of whether a retained expert in the underlying cause may nonetheless not be interested in a post-judgment proceeding to appoint a receiver. This appears to be a question of first impression under Texas law, as Marsha observes. Our resolution of that issue depends in part on the nature of the "interest" with which the legislature was concerned in section 64.021 and its statutory predecessors. *See* Tex. Civ. Prac. & Rem. Code Ann. § 64.021. Texas courts have long assumed that a financial stake in one of the parties would disqualify a prospective receiver. *See*, *e.g.*, *James*, 206 S.W. at 935 (disqualifying shareholder of party; citing cases involving partners appointed as receivers of partnership property and trustees or executors appointed as receiver of trusts estates from which they were compensated); *Roberts Tel. & Electr. Co. v. Farmers' & Merchants' Nat. Bank*, 155 S.W. 629, 632 (Tex. Civ. App.—Texarkana 1913), *rev'd on other grounds*, 206 S.W. 933, 935 (Tex. Comm'n App. 1918, judgm't adopted) (cashier and acting manager of bank who was also shareholder was disqualified from serving as receiver of bank).

However, we need not decide whether, as a general proposition, retained experts in underlying litigation could ever be appointed as receiver in a subsequent receivership proceeding. On the record before us, there was no evidence that Pena met the statutory requirements for serving

13

as receiver in this case. *See Pena v. Sell*, 760 S.W.2d 811, 812-13 (Tex. App.—Amarillo 1988, no writ); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 64.021. There was undisputed evidence that Pena had served as Marsha's testifying expert in the underlying cause. However, Marsha did not call Pena to testify at the hearing and offered no evidence, only argument, to establish that Pena did not have an ongoing business relationship, financial stake, or other interest in the receivership. On this record, we are compelled to hold that the district court abused its discretion in appointing Pena as receiver. We sustain Gary's third issue.

**Receivership fees**

In his fourth and fifth issues, Gary argues that the district court abused its discretion by setting the receiver's fee without any evidence of reasonableness, and by allowing the receiver to be compensated prior to his discharge. Marsha responds that the order authorizing fees is interlocutory because the trial court did not purport to determine the total value of the receiver's fee up to a certain time, depriving this Court of jurisdiction to consider this issue. *Bergeron v. Sessions*, 561 S.W.2d 551, 553 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.).

The order states that "it is hereby ORDERED, DIRECTED and AUTHORIZED that Receiver, STEVE D. PENA, CPA pay himself as receiver's fees an amount not more than twenty-five percent (25%) *of all proceeds coming into his possession* to be paid by the Receiver, *which amount the Court finds to be a fair, reasonable and necessary fee for the Receiver*, and to distribute *all remaining proceeds* to Plaintiff's attorneys. . . . Receiver fees in excess of twenty-five percent (25%) may be awarded *after application to a separate order* of this Court." (Emphasis added.) The plain language of the order indicates that at the time the order was signed, the court made a

14

determination that a twenty-five percent commission would be reasonable. The commission could be collected as the proceeds came into the receiver's possession; only remaining proceeds would be distributed. Moreover, the court found that if the receiver determined that twenty-five percent was not sufficient, he could apply for more in a separate request. The plain language of the order results in a final determination that twenty-five percent of proceeds was a fair, reasonable and necessary fee, and was made when the order was signed. Therefore, the order was not interlocutory and we have jurisdiction to consider whether there was evidence to support a finding that the fee was reasonable. *Id*.

The receiver's fee should be measured by the value of the services rendered; the results which are accomplished by the receiver must be considered in determining a reasonable fee. *Stanfield*, 2000 Tex. App. LEXIS 6743, at \*14; *B.B.M.M., Ltd. v. Texas Commerce Bank-Chemical*, 777 S.W.2d 193, 198 (Tex. App.—Houston [14th Dist.] 1989, no pet.). There must be evidence to establish reasonableness of the fee. *Stanfield*, 2000 Tex. App. LEXIS 6743, at \*14. Furthermore, prior to a final accounting and discharge of the receiver, only a partial advance toward a final fee may be made because the reasonableness of the fee is measured in light of the value of the receiver's work. *Bergeron*, 561 S.W.2d at 553; *see Stanfield*, 2000 Tex. App. LEXIS 6743, at \*14; *B.B.M.M., Ltd.*, 777 S.W.2d at 198. Yet, in the trial court, no evidence was presented of what would constitute a fair, reasonable, or necessary fee.

Marsha urges us to presume that the fee is reasonable because there was evidence that it would be difficult to trace Gary's assets and collect them. Even assuming she is correct, however, there was no testimony or other evidence establishing how much the receiver should be compensated

for the task.  Furthermore, the value of the receiver's future or ultimate accomplishments could not have been considered at the time the order appointing him was signed.  We sustain Gary's fourth and fifth issues.

**Master in chancery**

In his sixth, seventh, and eighth issues, Gary asserts that the trial court erred by appointing Pena as master in chancery without a finding of good cause and when Pena is not an attorney and has an interest in the litigation.  *See* Tex. R. Civ. P. 171.  Marsha responds that the appointment of a master in chancery is not a final, appealable order.

Texas Rule of Civil Procedure 171 permits the trial court, "in exceptional cases, for good cause," to appoint a master in chancery "who shall be a citizen of this State, and not an attorney for either party to the action, nor related to either party."  *Id*.  The order gives Pena, as master, "the fullest and broadest powers" under rule 171, including but not limited to ordering the production of evidence, scheduling hearings, and examining witnesses under oath.  Also pursuant to rule 171, Pena must file a master's report, and the court may then confirm, modify, correct, reject, reverse or recommit the report, after it is filed, as the court may deem proper and necessary in the particular circumstances of the case.  *Id*.

As a general rule, an appeal may be taken only from a final judgment.  *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001).  A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree. *Id*. Because Pena must complete his master's duties and file a final report which the trial court may accept, modify, or fully reject, among other options, the order does not fully dispose of all issues and

16

is interlocutory.  *See id*.  The legislature has declared that only certain narrow issues may be brought by interlocutory appeal, and, in contrast to the receivership issues addressed previously, an order appointing a master in chancery is not one of them.  *See Urso v. Lyon Fin. Servs.*, 93 S.W.3d 276, 278 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West Supp. 2004-05); *Hardy v. Silva*, No. 01-90-00135-CV, 1990 Tex. App. LEXIS 1690 (Tex. App.—Houston [1st Dist.] 1990, no pet.) (not designated for publication) ("With respect to the order appointing a master in chancery, we are aware of no authority authorizing an interlocutory appeal from this order.").  Accordingly, we are without jurisdiction to consider Gary's sixth, seventh, and eighth issues.[6]

## CONCLUSION

Having sustained Gary's first five issues, we reverse and remand for further proceedings consistent with this opinion.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Reversed and Remanded

Filed:  August 17, 2005

_____

[6] We express no opinion regarding the merits of these issues in the event they are later presented through other appellate avenues.