In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________


 

NO. 09-08-00185-CV


____________________



GLADYS BISHOP, Appellant



V.



KAREN SMITH, Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 06-07-06587 CV






 MEMORANDUM OPINION


 Gladys Bishop appeals the trial court's order that taxed her with the majority of Karen
Smith's receiver's fees: Smith served as the court-appointed receiver in the divorce
proceeding between Bishop's daughter, Connie Blake, and Jeff Blake. We affirm the trial
court's order.



Background

 A partial recitation of the tactics employed by the parties in this case is necessary to
explain our resolution of the issues on appeal. In July 2006, Jeff filed a petition for divorce
against Connie; Connie filed her counter-petition in response. In August 2006, in a separate
cause number, Bishop sued Jeff, Connie, and their family limited partnership, J and C Blake
Family Limited Partnership, L.P. In Bishop's suit, she claimed that Jeff, Connie, and the
partnership owed her $760,000.00 or more. Shortly after she filed suit, Bishop moved to
consolidate her case with Jeff and Connie's divorce proceeding. On August 28, 2006, the
trial court consolidated the two cases. On September 6, 2006, the trial court appointed Smith,
a licensed attorney, as receiver. The order gave Smith the following powers:

 1. to manage and oversee the sale of the Yap Note, (1)
including but not limited to the collection of the monthly
note payment in the amount of $6,100.00 and payment of
the monthly note payable to AMI during the interim
and/or pendency of the sale of the note and escrow of the
proceeds of any sale;


 2. to manage and oversee the completion of any and all
repairs to the residence located at 55 Wilmington . . . and
the potential sale, including but not limited to contacting
a realtor to list the home for sale; [and]

 

 3. to manage and oversee the collection and distribution of
rental proceeds from all rental properties owned by Jeff
Blake and/or Connie Renee Blake, including but not
limited to receipt and accounting of all monies received
from the rental properties and all monies paid for
payment of principal, interest, taxes, insurance and
repairs made to the properties.


The order further stated that Smith had the power and discretion to "maintain custody and
control of any monies related to the above described properties which she deems necessary
in order to effectuate the sale(s) and/or collection of monies." The record does not reflect
that any party objected to the trial court's appointment of Smith as receiver.

 Before trial, the parties filed numerous motions for temporary orders, enforcement,
injunctions, and sanctions against each other. At various times, Smith also filed monthly
motions in which she requested that the court approve her receiver's fees. Smith attached
invoices to her various motions to reflect her work as a receiver, the time it had taken to do
the work, the persons who did individual parts of the work, and each person's hourly rate for
the time that had been required to accomplish the work. Smith's motions for the approval
of her fees reflect that all of the parties were served with Smith's motions. The trial court
approved four of Smith's motions, but the trial court's orders approving payment are each
contingent upon the prospective sales of various marital assets.

 After a trial, the parties negotiated a settlement. On April 18, 2007, the trial court
signed the Final Decree of Divorce. All of the parties, including Bishop, are included as
parties in the Final Decree. With the exception of the Yap Note, the decree distributed the
Blakes' marital assets between all of the parties, including Bishop. The decree also provided
that Smith, "solely and without interference from any other persons, parties, and/or their
agents or representatives" was to oversee the sale of the Yap Note. The decree further
provided that upon the Yap Note's sale, its proceeds were to first be applied to the
outstanding balance on the AMI Note. Thereafter, the decree created priorities for additional
payments from the remaining proceeds. Smith's receiver's fees are included among these
items. Thus, with respect to how Smith's receiver's fees were to be paid, the decree
continued to reflect the expectation that the proceeds from the Yap Note's sale would satisfy
that liability connected to the Blakes' marital estate. After all other priorities had been
satisfied, Connie was to receive any of the net remaining proceeds from the sale of the Yap
Note. The Final Decree does not expressly contemplate the possibility that the Yap Note
would not be sold.

 After the trial court entered the Final Decree, the J and C Blake Family Limited
Partnership, L.P., Jeff, and Connie failed to pay the AMI Note's final balloon payment. The
possibility of foreclosure on the collateral securing the AMI Note adversely impacted the
value of the Yap Note. In an effort to salvage the value of the Yap Note, the trial court
conducted several emergency hearings, the first of which was held on May 23, 2007. Over
the course of these hearings, the trial court discovered that the AMI Note had been acquired
by a corporation owned by Bishop and created for the purpose of buying the AMI Note.

 On May 30, 2007, Bishop filed motions to remove the receiver and to recuse the trial
court judge. On that same day, Smith asked the trial court to approve a purchaser's proposal
to buy the Yap Note for an offer substantially lower than the parties had anticipated in
settling their lawsuit. In her motion requesting the court's approval of the proposed sale,
Smith alleged that Bishop and Connie interfered with her efforts to sell the note. Smith
asked the court to enjoin AMI, a nonparty, and Bishop's corporation, also a nonparty, from
foreclosing on the collateral secured by the AMI Note. Bishop filed objections to Smith's
request to approve the sale of the Yap Note.

 On June 15, 2007, the presiding administrative judge reassigned the case to another
trial judge. Subsequently, Bishop amended her motion to remove Smith as receiver. 
Bishop's motion disclosed that Bishop had purchased the interests of all of the parties to the
Final Decree. Among other things, Bishop's motion asserts that Smith never qualified to act
as receiver, misrepresented the value of the Yap Note, and breached her fiduciary duties in 
managing the marital estate. Bishop also asserted that Smith exercised powers beyond those
the court granted to her and argued that Smith was not entitled to any fees. Bishop filed a
separate motion in which she requested that the trial court hold Smith in contempt. 

 In response, and in light of the events that had occurred after the trial court entered
the Final Decree, Smith asked the trial court to determine the status of the receivership. 
Smith also sought approval and payment of her receiver's fees and responded separately to
Bishop's motion for contempt. Smith's response to Bishop's motion for contempt includes
a copy of the "Judgment Purchase Agreement," the contract reflecting Bishop's June 15,
2007 purchase of the parties' interests under the Final Decree. Smith also filed a response
to Bishop's request that she be removed as receiver. In her response, Smith requested that
the trial court assess the costs of the receivership against Bishop.

 The trial court conducted two hearings to address the issues related to Smith's 
services as receiver. Following these hearings, the trial court found that Smith "performed
her responsibilities as receiver with due care . . . " and awarded her compensation for serving
as receiver. The trial court ordered Bishop to pay $32,635.90 of the total amount it awarded
in receiver's fees, and also ordered Connie and Jeff to each pay a respective part of Smith's
total fee. Neither Jeff nor Connie appeals the trial court's ordering them to pay a portion of
Smith's receiver's fees. Bishop appeals from the order requiring that she pay her share of
Smith's fees.

Standard of Review

 We review awards of fees to receivers under an abuse of discretion standard. Moyer
v. Moyer, 183 S.W.3d 48, 51 (Tex. App.-Austin 2005, no pet.). Receiver's fees are
considered court costs and trial courts possess discretionary authority in adjudging costs. See
Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290, 293 (1959); Hodges v. Peden, 634
S.W.2d 8, 12 (Tex. App.-Houston [14th Dist.] 1982, no writ). Thus, we review the record
to determine whether the trial court acted in an unreasonable or an arbitrary manner, and
without reference to any guiding rules or principles. Beaumont Bank, N.A. v. Buller, 806
S.W.2d 223, 226 (Tex. 1991).

Procedural Issues

 Bishop's first two issues address the power of the court to order her to pay any portion
of Smith's receiver's fees. In issue one, Bishop contends that because she was not a party
to Jeff and Connie's divorce, the trial court erred in ordering her to pay a portion of Smith's
receiver's fees. Additionally, Bishop complains that before awarding Smith's receiver's fees,
the trial court had already adjudicated costs in a final, nonappealable judgment. As a result,
when the trial court ordered Bishop to pay Smith's fees, Bishop contends the trial court no
longer had power to assess receiver's fees. (2) In issue two, Bishop asserts the trial court erred
in awarding Smith's fees "before the trial court entered an order approving the receiver's
final accounting."

 With respect to Bishop's argument that she was not a party to the divorce proceedings,
we note that Bishop asked the trial court to consolidate her suit with the divorce proceedings
in her August 2006 motion. Bishop joined the divorce proceedings by virtue of the court's
August consolidation order before the trial court's appointment of Smith as receiver in
September 2006. Bishop does not challenge the validity of the trial court's consolidation of
the proceedings. 

 Generally, a consolidation of different lawsuits merges all the issues of law and fact
into a single case for trial or other disposition. See Am. Motorists Ins. Co. v. Box, 531
S.W.2d 401, 406 (Tex. Civ. App.-Tyler 1975, writ ref'd n.r.e.). Once the trial court
consolidated Bishop's claims into the divorce proceedings, all of the issues and facts
presented by both suits were merged into the consolidated case. See Box, 531 S.W.2d at 406. 
Because Bishop was a party to the consolidated suit, we conclude the trial court had the
power to assess costs against any of the parties, including Bishop, who were joined as parties
to the consolidated proceeding. Under the circumstances in the record, we are not persuaded
by Bishop's argument that the trial court assessed costs against a non-party.

 Next, Bishop contends that the trial court no longer had jurisdiction because it no
longer had plenary power over the Final Decree. However, the trial court retained
jurisdiction over the receivership and authority to award compensation to the receiver until
the receivership was terminated and the receiver discharged. Thus, even if the trial court had
lost plenary power over most of the issues that had been resolved by the Final Decree, we
disagree that the trial court no longer had power to award costs associated with the
receivership.

 The Final Decree includes a separate section that addresses Smith's continuing duties
regarding the Yap Note. In that section, the decree contemplates that the Yap Note be sold
and then states that Smith's receiver's fees shall be paid after Smith pays other specified
claims. Clearly, when the trial court entered the Final Decree, it acted under the belief that
the sale of the Yap Note would generate sufficient funds to pay off several liabilities incurred
by the marital estate, including Smith's receiver's fees. However, the Yap Note was not sold;
consequently, Smith's receiver's fees were not paid as contemplated by the Yap Note section
of the Final Decree.

 Nevertheless, the Final Decree did not discharge the receiver. The Final Decree by
its terms continued the receivership. The receiver was ordered to sell the Yap Note and pay
the proceeds in the manner directed by the Final Decree. Until the receiver was discharged,
the court retained authority to direct the receiver in the enforcement of the judgment and to
award compensation to the receiver for her services. See Bergeron v. Sessions, 561 S.W.2d
551, 554 (Tex. Civ. App.-Dallas 1977, writ ref'd n.r.e.); Gilles v. Yarbrough, 224 S.W.2d
720, 722 (Tex. Civ. App.-Fort Worth 1949, no writ). 

 When the parties post-divorce actions frustrated the sale of the Yap Note, it became
necessary for the trial court, with respect to Smith's receiver's fees, to further consider the
award of receiver's fees. In conclusion, the receivership remained in place; and the receiver
had not been discharged. In this case, we find no error in the court's assessing Smith's fees
in the post-judgment order discharging the receiver.

 Bishop also argues that Smith never qualified as a receiver because she failed to take
an oath. However, Bishop first raised this issue in June 2007. (3) Thus, Bishop waived her
objection because she failed to timely object that Smith had not filed an oath. See Tex. R.
App. P. 33.1.

 In issue two, Bishop asserts that the trial court awarded Smith's receiver's fees before
it approved the receiver's final accounting. Relying on Moyer, 183 S.W.3d at 58, and
Bergeron, 561 S.W.2d at 553, Bishop contends that the receiver's final accounting is
required before the trial court can award fees. In this case, the record does not demonstrate
that the trial court acted without the benefit of a final accounting. Before the trial court
awarded Smith's receiver's fees, Smith filed a verified final report and accounting. Smith
testified extensively about her report at the hearing before the court awarded her fees, and
all of the parties were permitted to question Smith about the report. Further, the trial court's
order awarding Smith's fees expressly approved of her final accounting. Because the record
does not support Bishop's arguments in issue two, we overrule it.

Reasonableness of Smith's Receiver's Fees 

 Bishop also challenges the reasonableness of Smith's receiver's fees. Bishop's first
issue, in part, argues that the trial court erred in its valuation of Smith's receiver's fees. In
issue three, Bishop asserts that Smith's fees are unreasonable because the trial court based
its award on her hourly rate for her work as an attorney. In her fourth issue, Bishop
complains that the trial court awarded Smith fees for work performed by other personnel in
Smith's law firm.

 Receivers are entitled to reasonable compensation. See Jones, 321 S.W.2d at 292-93. 
The value of a receiver's services determines the appropriate amount of compensation. 
Bergeron, 561 S.W.2d at 554. To determine the value of a receiver's services, courts
consider the following factors:

 (1) the nature, extent and value of the administered estate;


 (2) the complexity and difficulty of the work;


 (3) the time spent;


 (4) the knowledge, experience, labor and skill required of, or
devoted by the receiver;


 (5) the diligence and thoroughness displayed; and


 (6) the results accomplished.


Id. at 554-55. While courts should "cautiously avoid excessive or improper" fees, sufficient
fees should be permitted "to induce competent persons to serve as receiver[.]" Id. at 555.

 When reviewing whether the trial court abused its discretion in awarding the
receiver's fees, we should be mindful that "[t]he apportionment of costs should be controlled
by equitable principles and the ultimate success or failure of the party who requests the
appointment of a receiver is not in itself controlling, but is a prime factor in determining who
shall ultimately pay the costs of the receivership." Hodges, 634 S.W.2d at 12 (citing Jones,
321 S.W.2d at 293-94). A trial court may consider a party's wrongful conduct in the award
of receiver's fees as well. See Bayoud v. Bayoud, 797 S.W.2d 304, 317 (Tex. App.-Dallas
1990, writ denied).

 Smith testified regarding the complexity involved in managing the receivership. 
Smith stated it was "incredibly difficult and extremely time consuming" and despite her
working "tirelessly to try and accomplish the disposition of the assets" of the receivership,
she encountered resistance with respect to each task she performed. Smith explained that
resistence to her efforts came from all of the parties. Smith explained that Bishop's "direct
interference" in purchasing the AMI Note precluded Smith from selling the Yap Note. Smith
also described the complexities that Bishop created by her confidential purchase of the
parties' various interests in the Final Decree and how Bishop's actions frustrated the payment
of her receiver's fees.

 Smith expressed that she exercised good faith and due care in discharging her duties
as receiver and that she contributed a "substantial amount of time" to managing the
receivership. Smith affirmed that her total fees accurately reflected the amount necessary to
compensate her for the work performed in her duties as receiver. According to Smith,
without the continual interference she encountered, the receiver's fees incurred would have
been lower.

 Moreover, before the Final Decree, Smith filed monthly motions seeking approval of
her fees. The trial court approved several of them; however, the trial court conditioned its
interlocutory orders on the sale of certain martial assets. At that time, no party raised any
objection to Smith's evidence filed in support of these motions. Additionally, prior to the
parties agreeing to the terms of the Final Decree, Smith testified without objection to her
hourly rate and the total amount of fees as of the date of trial. According to Smith, given the
circumstances surrounding this particular receivership, her fees were reasonable and
necessary for the services that she performed. At the final hearing regarding Smith's
receiver's fees, Bishop acknowledged that a receiver should receive payment for work
performed and that Smith's hourly rate was not itself unreasonable.

 Bishop contends in her third issue that the trial court should not have awarded Smith's
receiver's fees at her hourly attorney rate. Although a receiver can serve as both receiver and
as an attorney in a proceeding, the compensation for each should be determined separately. 
See Hodges, 634 S.W.2d at 11; Bergeron, 561 S.W.2d at 554. "[A] receiver is not entitled
to compensation at a legal rate for work which does not require legal skills." Bergeron, 561
S.W.2d at 554. Here, however, it appears that the trial court considered Smith's work to
require the skills of an attorney based on the complexity of the litigation and the relationships
between the parties. See Hodges, 634 S.W.2d at 11. Specifically, the trial court's judgment
notes the difficult circumstances Smith encountered in administering the receivership and
states that Smith's experience as an attorney was necessary to enable her to perform her job. 
Based on our review of the record, and the fact that the trial court's judgment states that
Smith's experience as an attorney was necessary for this assignment, we hold the trial court
did not abuse its discretion in awarding Smith's fees based on her rate as an attorney in
valuing her services as a receiver. 

 Bishop's final issue asserts that the trial court erred by awarding Smith fees for
services rendered by other members of her firm. Bishop notes that the order appointing
Smith did not specifically provide her the right to obtain the assistance of others. However,
the order appointing Smith as receiver specified the assets she was to manage and oversee,
not the manner in which she was to accomplish her job. Additionally, the order included
several "including but not limited to" phrases when expanding on how Smith could discharge
her duties with respect to these assets. Thus, the order appointing Smith granted her broad
authority to manage certain assets. Except for the implicit requirement that receiver's fees
would be reasonable and necessary, the order appointing Smith did not expressly place limits
on exactly what resources she could use to accomplish her appointment. 

 Fees for a receiver, her attorney, and her accountant, are generally all included in the
expenses of a receivership. Bayoud, 797 S.W.2d at 317; see also Kuteman v. Ratliff, 154
S.W.2d 864, 866 (Tex. Civ. App.-Amarillo 1941, no writ). While the order in this case did
not specifically state that Smith could use the services of other members of her firm, the
order did not preclude her from seeking the assistance of others, for example an attorney,
accountant, independent appraiser, or loan specialist. 

 Moreover, Bishop does not complain that the services provided by the members of
Smith's firm are not related to the receivership or that their respective hourly rates are
unreasonable. Smith testified that the services provided by the other members of her firm
were both reasonable, necessary, and in the best interest of the receivership. Additionally,
Smith filed monthly motions that reflect that some of the receivership's services were being
performed by others. Bishop did not file objections asserting that Smith was acting beyond
her powers in response to Smith's monthly statements.

 Based on the complexity of the matter before us, the factors used to determine a
receiver's compensation, the language in the order appointing Smith as a receiver, and the
trial court's application of the rules in awarding receiver's fees under the unusual
circumstances here, we hold that the trial court did not abuse its discretion in awarding
$32,635.90 against Bishop as her part of Smith's receiver's fees. Because the trial court did
not award an unreasonable amount for receiver's fees, we overrule each of Bishop's issues
that complain about the reasonableness of Smith's receiver's fees. 

 Finally, Smith requests that we award her attorney's fees for Bishop's filing of a
frivolous appeal under Rule 45 of the Texas Rules of Appellate Procedure. "Whether to
grant sanctions for a frivolous appeal is a matter of discretion that this court exercises with
prudence and caution and only after careful deliberation in truly egregious circumstances." 
Goss v. Houston Cmty. Newspapers, 252 S.W.3d 652, 657 (Tex. App.-Houston [14 Dist.]
2008, no pet.). "If an appellant's argument on appeal fails to convince us but has a
reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's
judgment, sanctions are not appropriate." Id. Although we have concluded that Bishop's
issues are without merit, her appeal is not frivolous. See Tex. R. App. P. 45. 

 Issues one through four are overruled. Smith's request for sanctions is denied. 
Accordingly, we affirm the trial court's judgment. 


 AFFIRMED.


 ____________________________

 HOLLIS HORTON

 Justice



Submitted on April 9, 2009

Opinion Delivered December 31, 2009

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. On February 20, 2006, DIVAYA, L.L.C. obtained a loan in the amount of
$766,000.00 (the "Yap Note"), from J and C Blake Family Limited Partnership, L.P. The
AMI Note, dated April 11, 2005, in the face amount of $250,000, is a note owed by J and C
Blake Family Limited Partnership to Associated Mortgage Investors, a non-party to this
proceeding. Jeff and Connie guaranteed the AMI Note. Because the same property
collateralizes both notes and the AMI Note precedes the Yap Note, the AMI Note holds a
first priority security interest in the real estate that secures the two notes, and the Yap Note
has a second priority security interest in the same property.
2. Bishop's arguments in issue one that address the reasonableness of Smith's fees are
addressed under another section of the opinion, "Reasonableness of Smith's Receiver's
Fees."
3. Unlike receiverships governed by chapter 64 of the Texas Civil Practice and
Remedies Code, the Family Code contains no provision requiring a receiver to take an oath
to serve as a receiver in a divorce proceeding. Compare Tex. Civ. Prac. & Rem. Code
Ann. § 64.022 (Vernon 2008), with Tex. Fam. Code Ann. § 6.502 (Vernon 2006); see
also Norem v. Norem, 105 S.W.3d 213, 216 (Tex. App.-Dallas 2003, no pet.) (instructing
that the Texas Civil Practice and Remedies Code does not govern receivers in divorce
proceedings). In light of our holding that Bishop's argument concerning the receiver's
oath has been waived, we need not address whether an oath is required in a proceeding
under the Family Code.