No. 405.    ST. LOUIS UNION TRUST COMPANY v. TEXAS SOUTHERN RAILWAY COMPANY ET AL. (KERN EQUIPMENT).

**Receiver—Intervention—Lien—Judgment — Operating Expenses — Classification of Claims.**

A railway having been placed in the hands of a receiver and ordered sold under foreclosure of the mortgage of bondholders, the decree classified the claims entitled to payment from the proceeds in order of priority as follows: A. operating expenses and costs; B. and C. claims for labor and for supplies furnished the company prior to the receivership and certificates for money borrowed to pay such claims. An intervener on a claim for engines and cars sold the company obtained judgment with foreclosure of his lien on the property sold. The operation by the receiver continuing, a subsequent order found the property necessary to the operation of the road and directed the payment out of the earnings, making it a claim under class A. as operating expenses, and it was partly paid out of the earnings. The property was then sold under the bondholder's foreclosure free from the intervener's lien. In a controversy over the right to priority of payment out of the proceeds between the intervener and holders of receiver's certificates (class B. and C.) it is held that the court should have directed the payment of the balance of intervener's claim out of the proceeds of the sale of the road, as a part of the expenses of operation having priority over the receiver's certificates.

*C. E. Carter,* for F. M. Hubbell, intervener.—The debt of appellant having been made a receivership obligation secured by special lien, was entitled to payment in full before the payment of the receivership certificates Nos. 1 to 151, held by the St. Louis Union Trust Company. International & G. N. R. Co. v. Coolidge, 26 Texas Civ. App., 595; Anderson v. Condict, 35 C. C. A., 335; 24 Am. & Eng. Ency. Law (2d ed.), 32, and authorities, note 2.

Appellant's claim being an operating expense of the receiver, and under the order of court secured in payment by a specific lien on the specific property, is entitled to priority in payment from the proceeds of the sale of the road with the specific property, before other unsecured creditors of the receivership. Vilas v. Page, 106 N. Y., 439; Miltenberger v. Logansport Ry. Co., 106 U. S., 386.

*S. P. Jones,* also for intervener.—The uncontroverted evidence shows that the indebtedness of $157,000, in favor of the St. Louis Union Trust Company, being the receiver's certificates, was not incurred in the operation of said property by the receiver, but was a

funding of an indebtedness that existed against the railroad at the time the receiver was appointed, and the court should have so found as a conclusion of fact, and should have found that all the other indebtedness set out in class "A" was incurred by the receiver in the operation of the property under the orders of the court. Wallace v. Loomis, 97 U. S., 162; Barton v. Barbour, 104 U. S., 134; Miltenberger v. Logansport Ry. Co., 106 U. S., 286; Union Trust Co. v. Illinois Midland Co., 117 U. S., 434; St. Louis Ry. Co. v. Cleveland Ry. Co., 125 U. S., 658; Burnham v. Bowen, 111 U. S., 776; Kneeland v. American Loan Co., 136 U. S., 89; Thomas v. Western Car Co., 149 U. S., 95; Waters-Pierce Oil Co. v. United States & Mex. Trust Co., 44 Texas Civ. App., 397; International & G. N. Ry. Co. v. Coolidge, 26 Texas Civ. App., 595; Gluck & Becker on Receivers, sec. 37, p. 91; Anderson v. Condict, 35 C. C. A., 335; Bank of Commerce v. Central Coal Co., 53 C. C. A., 334.

*M. B. Templeton,* for St. Louis Union Trust Co.—This debt having accrued long before the appointment of a receiver, is not entitled to participate in the fund to the prejudice of the obligations incurred by the court incident to the receivership. Vaughan Lumber Co. v. Martin, 98 Texas, 80.

LEVY, Associate Justice.—This appeal is one in a series of appeals by creditors in the above styled case, and is by F. M. Hubbell, owner of the "Kern Equipment" demand, as it is called in the record, found to be by the court a debt against the receivership arising from the necessary operation of the road by the receiver, and by the court classified as such, and its payment directed to be on equality with the certificates of the Union Trust Company. The opinion in the St. Louis Union Trust Company appeal, this day decided, is referred to for a fuller statement of the appeal.

The record shows that, prior to the receivership, F. P. Kern sold two engines and a combination passenger, mail and baggage car to the Texas Southern Railway Company, and to secure their payment retained a chattel mortgage upon the same. After the appointment of a receiver in this case Kern intervened in the receivership proceedings, at the first term after the appointment of such receiver, and obtained judgment to the amount of his debt, and with foreclosure of his chattel mortgage lien against such property. This decree of foreclosure recites that "said intervener's lien on the said property is superior to all other liens as far as said property is concerned, and that said property should be sold separately from the other property involved in this receivership. It is therefore decreed that the special master commissioner who shall sell the property involved in this receivership be ordered to sell said property separately and report proceeds into this court for payment to the intervener in said lien, and for the further disposition of this court. It is further ordered, adjudged and decreed by the court that S. P. Jones, receiver, be and is hereby ordered and directed by the court to keep each and all of the above-described property in good order and repair, fully restoring the same

or any part thereof should it be damaged or destroyed. The final decree of foreclosure, entered at the same term of the court, of the railway properties under mortgage to secure the bonds, specially ordered and decreed the sale of all such properties to be subject to the specific lien and rights in said decree adjudged in favor of said Kern upon said rolling stock. The sale of the railway properties under foreclosure failed for want of a bidder, and the court undertook to operate the road thereafter, as it appears in the record, and such rolling stock continued in the possession and use of the receiver in such operation of the road. It is admitted in the record that F. M. Hubbell is the owner of the F. P. Kern judgment debt against the railway company for such rolling stock. Thereafter, on the 24th day of March, 1907, F. M. Hubbell made application to the court to have the said judgment paid; and the court, after hearing said application, decreed, as far as material to set out, that, "it appearing to the court that said engines and car are now, and have been since the rendition of said decree, in the hands of the receiver of the property of the defendant, and are being used by him in the operation of the railroad in his hands, and that they are necessary to the operation of said road; and it further appearing that said judgment foreclosing said special lien, and that said Hubbell is entitled to an order of sale to sell the said property, and to have the proceeds applied to payment of said judgment, together with the accumulated interest thereon; it is therefore considered, ordered and decreed by the court that said judgment be and the same is classified as court costs and expenses of operation of the property in the hands of the receiver and placed in class 'A,' and the special master, P. M. Young, is ordered to pay the same, together with six percent interest from the date thereof until paid, in monthly installments of $400 per month; said payments to be made to said Hubbell, for which he shall receipt. Provided, however, that the payment of such installments shall commence and the first of same be paid on the first day of May, 1907. The court reserves jurisdiction of this order only for the purpose of finally classifying the same, as against the corpus of the property or the earnings at some future term, and it is expressly provided that the special lien in said decree against said engines and car is not affected by this decree." The sum of $1,200 in the aggregate was afterwards paid by virtue of this order, out of the earnings of the receivership. All of this rolling stock and the other railway properties were sold together at the foreclosure sale in August, 1908. After the said sale a decree of confirmation of the sale was entered by the court, which recites that the confirmatory conveyance ordered to be made and delivered to the purchasers "shall be a full and complete release of all liens, equities and title reserved in former judgments and orders of this court."

*After stating the case.*—After the sale of the railway properties the court directed the payment of the Hubbell demand in question out of the proceeds of the sale, and on an equality with the receiver's certificates. The appellant Hubbell specifies for error the refusal of

the receiver in priority to the certificates. The certificate holders also present error, and contend that the payment of this demand on an equality basis with the certificates was error.

It seems that the demand in question was first passed to judgment by intervention in the receivership as a pre-existing debt against the railway company, and with a foreclosure of the chattel mortgage lien on the particular engines and car to pay the same. The final decree of foreclosure in the receivership recognized this lien and directed a sale of the railway properties separate from the above property. The first sale of the railway failed for want of bidders, and the court undertook, it appears, to operate the road. It would thus far appear that the purchasers of the road took title subject to Hubbell's lien on the particular property in question, and that Hubbell would be referred to his proper legal remedy existing to him in this respect in regard to payment of his demand. But a proper construction of the further orders of the court shows, we think, that the court undertook and did assume to pay such indebtedness of Hubbell as a necessary operating expense of the receivership incurred in order to retain and have the use and ownership of the two engines and car for operating purposes. It appears that after failure to sell the road at foreclosure sale, and after more than a year of operation of the road by the court through a receiver, the appellant Hubbell made an application to the court for authority to have sold the engines and cars to pay his judgment of foreclosure thereon. On this application the court entered an order directing the payment of said judgment by the receiver out of his earnings of the road "as court costs and expenses of operation of the property in the hands of the receiver," instead of allowing a foreclosure sale to occur. In this order the court is specific in showing the necessity for the retention of the property, and further recognizing the right, in the circumstances of appellant, to have it sold to satisfy the debt. The court's findings were "that said engines and cars are now, and have been since the rendition of said decree, in the hands of the receiver of the property of the defendant, and are being used by him in the operation of the railroad in his hands, and they are necessary to the operation of said road; and it further appearing that said judgment forecloses said special lien, and that said Hubbell is entitled to an order of sale to sell the said property and to have the proceeds applied to the payment of said judgment and interest." It then decrees the payment of this judgment, allowing Hubbell to retain his lien. The court had the power, it must be conceded, to order the sale of the property and the proceeds paid to Hubbell, and he had the power to authorize the receiver to become the purchaser at sale. What the court could do directly was in this instance done indirectly—that is, by an order treating the debt as a receivership obligation, turning the equipment into a receivership asset and recognizing the former lien for the payment, in installments, of the balance. It appears that $1,200 out of the earnings was paid by the receiver on the judgment. The court expressly retained jurisdiction over the order "for the purpose of finally classifying the same as against the corpus of the property or the earnings at some future term." It appears that this particular property was actually passed to

the receivership assets and sold with all the property in bulk, and confirmed to the purchasers in "full and complete release of all liens, equities and title reserved in former judgments and orders of this court." This latter recital and decree obviously has application to the Hubbell judgment of foreclosure on the rolling stock. The court makes the finding that all the demands in class "A," in which the residue of the instant demand was placed for payment, "were contracted and created during the receivership, and are just charges against the same for the respective amounts therein set forth, and that all of said debts grew out of and were incident to the operation of the road in the hands of the said receiver." It follows, we think, that the finding of the court is sustained that the residue of the demand in question, in the facts, legally became and was a receivership obligation growing out of and incident to the operation of the road by the receiver.

It appears that the order of the court first made to pay the Hubbell judgment classified it "as court costs and operating expenses of the property in the hands of the receiver and placed in class 'A,'" payable, however, at the time out of the earnings of the road. But the order further expressly reserved the jurisdiction and power of the court, it recites, to finally order its payment, at a later term of the court, "as against the corpus of the property or the earnings." When it came time for the court to exercise his power to order the final payment of this particular demand, the court expressly exercised his power to direct the payment out of the proceeds of sale along with the other operating expenses and charges of the receiver. This final order placing this demand in same class with other operating expenses conclusively evidences the purpose of the court to have same paid as previously ordered, "as operating expenses." Holding, as we do, that the court's finding is sustained, and the residue of the Hubbell demand was properly classed by the court as an obligation of the receivership as such, and holding, as we have in the appeal of the certificate holders, that the certificates in question by the terms of the order of their issuance were expressly made payable subject to operating expenses and charges incurred by the court through the receiver in the operation of the road while in his custody, the contention of appellant Hubbell is sustained and the assignments of the St. Louis Union Trust Company are overruled.

The decree of the court as between appellant Hubbell and the certificate holders is so far reversed and here reformed that the demand of F. M. Hubbell be paid out of the proceeds of the sale as operating expenses and charges of the receiver in priority of payment of the certificates in question, and that the decree of the court, as between these said parties, as here reformed, be then affirmed, with costs of this appeal against the St. Louis Union Trust Company.

*Reversed, reformed and rendered.*

Writ of error refused