**FORMAN v. IRBY et al.**

No. 1984.

Court of Civil Appeals of Texas.   Waco.

March 31, 1938.

Rehearing Denied April 28, 1938.

1230

Jos. W. Hale and Travis McCown, both of Waco, for appellant.

Burford, Ryburn, Hincks & Charlton and Logan Ford, all of Dallas, for appellees.

ALEXANDER, Justice.

This suit was brought by Dr. Frank Forman on June 10, 1930, against W. D. Prince, as receiver of Lloyds of Texas, J. P. Irby, and others, to cancel and set aside his subscription contract for stock in said Lloyds of Texas, and for certain other relief in connection therewith. A trial before the court resulted in judgment for the defendants. The plaintiff appealed.

The plaintiff alleged, in substance, that in 1928 he was fraudulently induced to execute articles of association and to subscribe for five units of stock, of the value of $1,000 each, in Lloyds of Texas, an insurance company organized under pertinent provisions of the statutes of Texas and authorized to do an insurance business on the Lloyds' plan. He alleged that he was induced to enter into such subscription contract because of certain false and fraudulent representations by its promoters, to wit: (1) That one Dr. Woodson, who was reputed to be a careful investor, had purchased stock to the amount of $100,000 in said company; (2) that one Mike Thomas, who was immensely rich and a large cotton broker, had sub-scribed for a large share of said stock; that said Thomas had contracted to insure all cotton purchased by him in said company; (4) that the company had already contracted for enough insurance to pay a dividend of ten per cent on the stock; and (5) that no part of the cash paid in by those purchasing stock would be used for promotion fees; and that each of said representations was false. The articles of association and by-laws required those purchasing stock therein to pay at least 15 per cent. of their subscription in cash, to deposit satisfactory stock, or other securities, to the amount of 25 per cent., and to execute their notes for the balance of 60 per cent. of the stock so purchased by them. Forman paid $750 in cash, executed to the association his nonnegotiable note for the sum of $3,000, and delivered to the association two shares of stock in the Pioneer Building & Loan Association of the par value of $1,000 each. He also executed his power of attorney appointing Thomas Investment Company, a corporation, his attorney in fact. Lloyds of Texas was later adjudged to be insolvent, and W. D. Prince was appointed receiver thereof by a district court of Dallas county in June, 1930. Forman sought recovery of the $750 which he had been induced to pay in cash and to have his note in the sum of $3,000 canceled. He also alleged that the stock in the Pioneer Building & Loan Association, above referred to, had not been transferred to Lloyds of Texas as a part of the assets thereof but had been merely delivered as collateral to secure payment of 25 per cent. of his purchase. He sought a return of this stock. He made Pioneer Building & Loan Association a party to the suit and caused that company to be temporarily enjoined from transferring on its books the stock above referred to pending a trial of this case. After the filing of this suit by Forman and prior to a trial thereof, Prince, as receiver of Lloyds of Texas, filed suit in the district court of Dallas county against Forman to recover judgment on his subscription contract in the sum of $4,250 and for foreclosure of his pledge lien on the building and loan stock in question. Upon a trial of the case at bar, Prince, as receiver, agreed that the allegations of fraud in plaintiff's original petition were true, and that they actually induced the execution of the articles of association, the power of attorney, and the subscrip-

tion note, and the delivery of the securities in question, and that plaintiff was entitled as a matter of law to have the articles of association, etc., canceled unless the matters alleged by Prince in his answer precluded and prohibited such result. In his answer Prince sought no affirmative relief against the plaintiff, but, by way of defense, alleged, among other things, that he, as receiver of Lloyds of Texas, represented the creditors who held unsatisfied claims against Lloyds of Texas to the extent of $77,811.56; that such claims had been incurred in good faith in reliance on Forman's subscription contract; and that Forman was now estopped to set up such fraud as against Prince as such receiver.

█ The first material question to determine is whether Forman's subscription contract with Lloyds of Texas was void or merely voidable. Appellant contends that in view of the fraud which was admittedly practiced on him in the procurement of such subscription contract, said contract was absolutely void, while the appellees contend that it was merely voidable. Williston on Contracts distinguishes fraud which renders a contract merely voidable from that which renders it void in the following language: "Fraud may induce a person to assent to do something, which he would not have otherwise done, or it may induce him to believe that the act which he does is something other than it actually is. In the first case, the act of the defrauded person is effectual, though voidable. In the second case, the act of the defrauded person is void." An analysis of the allegations made by Forman shows that the effect of the fraud of which he complains was to induce him to assent to the making of a contract, the terms of which were well known to him, and that such fraud did not mislead him as to the character of the contract that was being executed by him. Under these circumstances, his contract was merely voidable and not void. 14 C.J. 588; Hurt v. Wallace, Tex.Civ.App., 49 S.W. 675; Davis v. Burns, Tex.Civ.App., 173 S.W. 476.

█ Since Forman's subscription contract was merely voidable and not void, does Forman have the right to cancel same as against subsequent creditors of the organization? The report of the master in chancery in the receivership proceedings in the district court of Dallas county shows that there is an outstanding indebtedness against the insolvent corporation of $77,811.56. Of this amount $58,214.19 represents claims of policyholders for fire losses, $9,247.68, unearned insurance premiums due policyholders, and $10,349.69, miscellaneous claims. All claims due policyholders for unearned premiums and fire losses are on contracts entered into after the date of Forman's subscription contract and before he undertook to repudiate same. The assets of the corporation are insufficient to pay claims and losses approved against the organization. It appears to be a well-established rule in Texas that a subscriber to the capital stock of a corporation cannot, as against subsequent creditors, defeat his liability as a stockholder on account of fraud in inducing his contract of subscription. This rule is based on the theory that a subscriber to the corporate stock of a corporation, by his own act, has induced subsequent creditors of such corporation to believe that the capital stock subscribed by him has been, or will be, paid in and will remain a trust fund to which subsequent creditors may look for security. It is said that "where a party has trusted and been deceived, he ought to bear the loss occasioned by his own credulity, rather than that the same should be borne by another who was not a party to such transaction." Davis v. Burns, Tex.Civ.App., 173 S.W. 476, 479; Chapman v. Harris, Tex.Civ.App., 275 S.W. 75; Reeves v. Powell, Tex.Civ.App., 267 S.W. 328; Mathis v. Pridham, 1 Tex.Civ.App. 58, 20 S.W. 1015; Dennis v. Thomson, 240 Ky. 727, 43 S.W.2d 18; 10 Tex.Jur. 761, 766; 7 Tex.Jur. pp. 953, 954; 14 R.C.L. pp. 971, 972; 14 C.J. p. 588, 598; Williston on Contracts, vol. 3, par. 1488, p. 2648; Thompson v. First State Bank, Tex.Civ.App., 189 S.W. 116; Id., 109 Tex. 419, 211 S.W. 977; Shaw v. Borchers, Tex.Com.App., 46 S.W.2d 967. The above rule has been applied in favor of creditors of an insurance company as against the subscribers to the stock thereof. Davis v. Burns, Tex.Civ.App., 173 S.W. 476. We see no reason why the creditors of an exchange organized under the statutes of this state to write insurance of the Lloyds' plan should not be entitled to similar relief as against those who have subscribed for stock therein. Garner v. Jones, Tex.Civ.App., 81 S.W.2d 536; In re Lloyds of Texas, D.C., 43 F.2d 383. Consequently, we hold that Forman, merely because of the fraud inducing him to subscribe for the stock in question, was

not entitled to rescind his contract as against the receiver as the representative of the subsequent creditors of the defunct concern. It is regrettable that we should have to sustain a contract procured by such ruthless fraud, but it appears that either Dr. Forman or the innocent creditors who have relied on the validity of his subscription contract must suffer. Under these circumstances, the loss must fall on Dr. Forman, who had the better opportunity to discover the fraud and to prevent the loss. 7 Tex.Jur. 953.

Appellant contends that Prince, as receiver of Lloyds of Texas, did not satisfactorily establish that there were creditors with outstanding unsatisfied claims against the insolvent concern. In proving such facts Prince was permitted to introduce in evidence a nunc pro tunc order of date February 2, 1935, in the receivership proceedings in the district court of Dallas county by which said court, as of June 15, 1933, appointed Joe M. Hill as master in chancery, for the purpose of determining, after a hearing and upon reasonable notice, the validity, amount, and date of the accrual of the various claims theretofore filed in that cause against the Lloyds of Texas. He also introduced the report of such master in chancery and the order of the court confirming such report. It is appellant's contention that this report and the orders above referred to were inadmissible because appellant was not notified of either the appointment of such master in chancery, the motion to enter the nunc pro tunc order making such appointment, the hearing held by the master in chancery to ascertain the amount of such claims, or the order of court confirming his report. Forman was a party to the receivership proceedings in the district court of Dallas county, in which case the master in chancery was appointed. The nunc pro tunc order, of date February 2, 1935, authorizing the entry of the order as of June 15, 1933, appointing the master in chancery, recites that due notice of the motion to enter same was given to all interested parties, and the order appointing the master in chancery recites that it was made by the court on its own motion. In addition to the nunc pro tunc order above referred to appointing the master

in chancery, said court again, on February 9, 1935, referred to said master in chancery the matter of ascertaining the amount of such claims and directed him to give notice and conduct hearings and to report his findings for approval thereon not later than February 23, 1935. On February 23, 1935, the court entered an order approving and confirming the report of such master in chancery. Said order recites that it was entered after notice and hearing and in compliance with the orders of said court. There was also oral testimony introduced tending to show that certain attorneys representing Forman were given notice of the application for the entry of the nunc pro tunc order. Forman offered no proof to sustain his contention that he was not properly notified prior to the entry of the orders in question. The attack made by him on the order appointing the master in chancery, the report of the master in chancery, and the order confirming such report, is a collateral attack. 25 Tex.Jur. 744–746. Under these circumstances, all reasonable presumptions that may be necessary to uphold the validity of such orders will be indulged, including the presumption that all interested parties were properly notified, and that the court making such orders had jurisdiction over both the person and the subject matter of the suit. 25 Tex.Jur. 830, 834. Consequently, we hold that the validity of the report of the master in chancery and the order confirming same were properly established. Forman reserved no exception or objection to the master's report or confirmation thereof. In the absence of a reservation of an exception to the master's report and the order confirming the same, such report was binding on Forman as a party to such proceedings. 36 Tex.Jur. 701; Richardson v. McCloskey, Tex.Com.App., 276 S.W. 680, 685; Richie v. Levy, 69 Tex. 133, 6 S.W. 685; St. Louis Union Trust Co. v. Texas Southern Ry., 59 Tex.Civ.App. 176, 126 S.W. 306. In our opinion, such report was admissible in this cause as prima facie proof of the outstanding indebtedness of the defunct insurance company.

We have considered all other assignments and find no reversible error.

The judgment of the trial court is affirmed.