

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00100-CV

_____

WAYMON HARTWELL A/K/A SCOTT HARTWELL, Appellant

V.

THE FUNDWORKS, LLC, Appellee

On Appeal from County Court at Law No. 2
Denton County, Texas
Trial Court No. CV-2021-03523

Before Kerr, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

In five points, Appellant Waymon Hartwell a/k/a Scott Hartwell[1] attacks the portion of an order granting a turnover order—which Appellee The Fundworks, LLC had sought to aid in collecting on a judgment that Fundworks had obtained against Hartwell on a personal guaranty that he had executed—and the provisions of the order governing the appointment of a receiver to facilitate its execution.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002.[3] We will modify the trial court's order in one

---

[1]The notice of appeal in this matter also lists HHH Cattle, LLC as an appellant. As we will explain below, HHH filed bankruptcy during the litigation and was dismissed from the suit. HHH was not a party when the challenged order was rendered, nor is HHH listed in the order's style; therefore, we likewise do not include HHH in the style of this appeal.

[2]The challenged order is entitled "Order Compelling Answers to Interrogatories, Production of Documents, the Issuance of a Turnover Order, and the Appointment of a Receiver" and was rendered on February 14, 2023.

[3]In relevant part, Section 31.002 provides as follows:

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction, including a justice court, through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the

2

regard and affirm it as modified. Specifically, we dispose of Hartwell's issues as follows:

- Hartwell's first three points turn on the contention that the trial court did not render a final judgment on Fundworks's claim against him and erred by granting turnover relief and appointing a receiver without the rendition of a final judgment on the debt that Fundworks sought to collect. This contention relies on the premise that the trial court's summary-judgment order allegedly referenced and granted a motion for summary judgment that had been superseded by a later-filed amended motion. This premise and therefore Hartwell's jurisdictional contention are belied by the plain language of the summary-judgment order.

- Hartwell's fourth point contends that a turnover receiver cannot be appointed without requiring the receiver to post a bond. It is within the

debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

(2) otherwise apply the property to the satisfaction of the judgment; or

(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a), (b). Further, a turnover order that functions as a mandatory injunction is a final, appealable order. *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 586–87 (Tex. 2018) (per curiam). No one contends that the turnover order rendered by the trial court lacked the character of a mandatory injunction.

3

trial court's discretion to decide whether to require a turnover receiver to post a bond. Thus, Hartwell's theory that a bond is required for every turnover receiver is not supportable, and he does not contend that it was an abuse of discretion to permit the receiver in this particular case to serve without posting a bond.

- Hartwell's fifth point contends that the trial court erred by awarding the receiver a flat fee of 25% of all proceeds coming into his possession. We agree but address the error by modifying the order to provide that the 25% fee award is conditional and is subject to later review by the trial court to ensure that a fee in the specified percentage is reasonable.[4]

## II. Analysis

**A.  We set forth the reasons why we reject Hartwell's contention that there is no final judgment on Fundworks's claim and thus no final judgment for Fundworks to collect through a turnover proceeding.**

In his first point, Hartwell argues that a precondition to turnover relief does not exist because the trial court never rendered a final judgment on Fundworks's claim against him. Hartwell predicates this argument on his reading of the summary-judgment order, which he contends granted a particular motion for summary judgment that had been amended and thus was not a viable motion for the trial court to grant. We reject the argument's premise that the judgment in question should be

---

[4]We forgo a detailed recitation of this appeal's factual and procedural background as our discussion of the background that is set forth within our analysis of Hartwell's first point adequately portrays the trial-court proceedings.

4

read as granting the superseded motion. Instead, it is clear that the trial court granted a viable motion for summary judgment.

Hartwell's claim of confusion arises from the evolution of the filings in the litigation to address the bankruptcy of a party that Fundworks initially sued. Fundworks initially sued (1) HHH Cattle, LLC for breach of contract by failing to pay a debt and (2) Hartwell on the guaranty of that debt; Fundworks later filed an amended petition asserting the same claims against HHH and Hartwell. Fundworks filed a motion for summary judgment with respect to its claims against both HHH and Hartwell. Within days of the filing of the summary-judgment motion, HHH filed a suggestion of bankruptcy. Fundworks responded to HHH's bankruptcy filing by nonsuiting its claims against HHH, and the trial court signed an order memorializing that nonsuit. Fundworks then amended its petition to assert only the guaranty claim against Hartwell. In turn, Fundworks filed an amended motion for summary judgment that sought judgment against only Hartwell on the guaranty claim.

Fundworks gave notice of the hearing set on the amended motion for summary judgment by a letter that stated,

> I have enclosed a copy of Plaintiff's Amended Motion for Summary Judgment filed in the above-styled and referenced cause. Please be advised that Plaintiff's Amended Motion for Summary Judgment is set for hearing on **Tuesday, July 5, 2022[,] at 10:30 a.m. in the Courtroom of the County Court at Law No. 2 of Denton County, Texas.**

On the hearing date, the trial court signed a summary-judgment order that recites the following:

> On this day . . . came on for consideration *the Motion for Summary Judgment of The Fundworks, LLC ("Plaintiff") against Waymon Hartwell a/k/a Scott Hartwell ("Defendant")*, and after having duly considered the pleadings, affidavits, and exhibits on file, the [c]ourt finds [that] there is no genuine issue of material fact and that Plaintiff is entitled to a judgment as a matter of law against Defendant. [Emphasis added.]

The summary-judgment order contains a Mother Hubbard clause. The "Case Summary" that is included in the record indicates that Hartwell's counsel did not appear for the summary-judgment hearing.

Hartwell filed a motion to vacate and an amended motion to vacate that primarily offered excuses regarding why he had not responded to Fundworks's summary-judgment motion and sought a new trial. These motions did not challenge the finality of the summary-judgment order or suggest an ambiguity in the order's recitation of which summary-judgment motion the trial court had granted. The initial motions to vacate were eventually heard and denied, but the denial happened at a hearing that occurred more than six months after the trial court had signed the summary-judgment order.[5] No appeal was ever filed with respect to the summary-judgment order.

---

[5]At the hearing on Fundworks's motion to compel, application for turnover, and request for a charging order, Fundworks pointed out that the trial court's plenary jurisdiction over the summary-judgment order had long ago expired.

The trial court's summary-judgment order was subsequently abstracted, postjudgment discovery was propounded, and a turnover order and a receiver were sought by Fundworks. Fundworks also sought a charging order with respect to Hartwell's interest in HH Land LLC, which is apparently a different entity than the original defendant in this matter—HHH Cattle, LLC. On February 14, 2023, the trial court granted the charging order, compelled responses to the postjudgment discovery, granted Fundworks a turnover order, and appointed a turnover receiver. Fundworks later moved for a second charging order, which the trial court granted.

Hartwell and HHH (long dismissed from the suit) then filed a notice of appeal with respect to the February 14, 2023 order appointing a receiver and other matters involved in that order. More than a month after filing the notice of appeal, Hartwell and again HHH filed a motion to vacate challenging the trial court's postjudgment order; they argued for the first time that the summary-judgment order was interlocutory, and thus, there was no final judgment on Fundworks's underlying claim. Hartwell and again HHH then filed a second motion to vacate. The parties litigated these motions, as well as the receiver's motion to compel and to show cause. The trial court denied both motions to vacate and granted the receiver's motion to compel and to show cause. Hartwell and HHH filed joint notices of appeal with respect to the orders denying the first and second motions to vacate and the order granting the receiver's motion to compel and to show cause. We dismissed the three other appeals for want of prosecution. *See HHH Cattle, LLC v. The Fundwork*[*s*]*, LLC*, No. 02-23-

7

00226-CV, 2023 WL 6152619, at *1 (Tex. App.—Fort Worth Sept. 21, 2023, no pet.) (mem. op. & judgment); *HHH Cattle, LLC v. The Fundwork*[*s*]*, LLC*, No. 02-23-00262-CV, 2023 WL 6152616, at *1 (Tex. App.—Fort Worth Sept. 21, 2023, no pet.) (mem. op. & judgment); *HHH Cattle, LLC v. The Fundwork*[*s*]*, LLC*, No. 02-23-00263-CV, 2023 WL 6152615, at *1 (Tex. App.—Fort Worth Sept. 21, 2023, no pet.) (mem. op. & judgment).

Hartwell's first point in this appeal reverts primarily to the argument that the unappealed summary-judgment order was not final—the argument first raised in the motion to vacate, which was filed after the time to appeal that judgment had passed. Hartwell's argument is that the trial court granted Fundworks's first summary-judgment motion (which was filed before HHH filed bankruptcy) and not the amended motion seeking a recovery only against Hartwell that Fundworks filed after the nonsuit of HHH and had noticed for hearing.

Though somewhat camouflaged in the briefing, the pivot point of the argument is that the summary-judgment order's recital did not specify "amended" when referring to the motion for summary judgment under consideration and granted by the summary-judgment order. For this reason, Hartwell argues that the trial court must have granted Fundworks's first motion for summary judgment that was no longer viable because it had been superseded by the amended motion. Hartwell's argument fails because the recitation in the judgment regarding the motion that was

8

considered—though it did not use the word "amended"—plainly referred to the live motion.

The standard we follow in interpreting a trial court's order is well established and requires that we review an order in accordance with its plain language and not in a fashion that would produce an absurd result:

> The same rules of interpretation apply in construing the meaning of a court order as in ascertaining the meaning of other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) (orig. proceeding). We will examine and consider the entire order so that none of the provisions will be rendered meaningless, if possible. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000). Just as with an unambiguous contract, we enforce an unambiguous order according to its plain terms. *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011). However, under general rules of construction, we avoid strictly construing an order's language if it would lead to absurd results. *Id.* An order is ambiguous if it is legitimately "susceptible of more than one reasonable interpretation." *Id.* Where an order is ambiguous, the order may be construed in light of the motion and the record upon which it was granted. *See Lone Star Cement*, 467 S.W.2d at 404–05; *Palomin v. Zarsky Lumber Co.*, 26 S.W.3d 690, 694 (Tex. App.—Corpus Christi[– Edinburg] 2000, pet. denied).

*In re Estate of Hoskins*, 501 S.W.3d 295, 301–02 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.).

The argument that Hartwell asks us to buy is that the recitation—that the trial court considered "the Motion for Summary Judgment of The Fundworks, LLC ('Plaintiff') against Waymon Hartwell a/k/a Scott Hartwell ('Defendant')"—is not synonymous with the trial court's considering Fundworks's amended motion for summary judgment. Instead, he argues that the recitation must mean that the trial

9

court had considered Fundworks's first motion for summary judgment. Hartwell makes this argument even though the recitation describes exactly what the amended motion for summary judgment was—a motion for summary judgment against Hartwell—and by this description excludes what the original motion for summary judgment was—a motion against HHH *and* Hartwell. It is clear what the trial court considered, and it would be absurd to interpret the order as considering a motion against a party that had been dismissed from the suit and against which the order grants no relief and that is unmentioned in the order. Indeed, HHH is no longer contained in the order's style, and the reference throughout the judgment is to the singular "Defendant."

The authority that Hartwell cites is inapposite. He cites primarily our opinion in *King v. Regions Bank*, No. 02-15-00201-CV, 2016 WL 2586663, at *2 (Tex. App.— Fort Worth May 5, 2016, no pet.) (mem. op.). *King* involved a summary-judgment appeal in which the trial court plainly recited that it had considered the third amended motion but was granting summary judgment on the second amended motion, which had been superseded by the filing of the third amended motion. *Id.* In that circumstance, "the express language of the judgment allow[ed] us to assume *only* that the trial court [had] considered a live motion and [had] granted a dead motion, which render[ed] the summary judgment erroneous." *Id.* at *3 (emphasis added). Such is not the circumstance here where the order states that the trial court considered all the pleadings on file and granted the motion that dealt solely with Hartwell—that being

10

the amended motion for summary judgment, as it was the only one that involved

solely Hartwell.[6]

_____

[6]Hartwell also argues that the trial court must have been considering the first motion because docket entries reference "Plaintiff's Motion for Summary Judgment." Simply, "[a]fter a judgment is rendered in writing and signed, it is the official judgment of the court. *Harrington v. Harrington*, 742 S.W.2d 722, 724 (Tex. App.—Houston [1st Dist.] 1987, no [writ]). The written order takes precedence over a docket entry. *Id.*" *In re C.E.R.*, No. 11-12-00246-CV, 2014 WL 4079950, at *1 (Tex. App.—Eastland Aug. 14, 2014, no pet.) (mem. op.).

Again, sidestepping the argument about which motion the summary judgment actually refers to, Harwell's reply brief catalogs ambiguities in the Case Summary included in the clerk's record:

> The Index for the Clerk's Record for this appeal references a "Motion for Summary Judgment" and "Amended Motion for Summary Judgment" with corelative page references. The Case Summary for this appeal references a "Motion for Summary Judgment" with a date of February 22, 2022, and "Amended Motion for Summary Judgment" with a date of May 27, 2022. The Case Summary for this appeal references "Plaintiff's Motion for Summary Judgment – Oral" with a date of July 5, 2022, the same date as the Summary Judgment was signed. Note that the Case Summary for this appeal references "Plaintiff's Motion for Summary Judgment – Oral" with a date of March 23, 2022, when the AMSJ had not yet been filed, but the same event description is used on March 23, 2022[,] and July 5, 2022. The Case Summary for this appeal references a General Docket Entry with a date of July 5, 2022, the same date as the Summary Judgment, which states: P's MSJ - oral - p appeared through counsel - halls called no d - no response by d – argument heard - granted and entered. *It is irrefutable that only the MSJ, not the AMSJ, was considered and granted on July 5, 2022.* [Emphasis added.] [Record references omitted.]

Hartwell cites no authority giving the docket or case-summary entries precedence over the recitations in a judgment. In fact, his argument underscores why the considered recitations of a judgment should control rather than hurried entries made on a docket sheet or a case summary.

11

As a subsidiary argument, Hartwell contends that

> [t]o add insult to injury, the alleged notice letter dated May 31, 2022 (the "5/31/22 Letter"), states that the AMSJ, not the MSJ, will be heard on July 5, 2023. To be clear, notice of a live motion (i.e., the AMSJ) was allegedly given by Appellee to Appellants (or at least one of them) pursuant to the 5/31/22 Letter, but a dead motion (i.e., the MSJ) was considered and granted on July 5, 2022. [Record reference omitted.]

Because we conclude that the judgment recites that the trial court considered the proper motion, we see neither an insult nor an injury.[7]

_____

[7]In an argument that is, at best, difficult to follow, Hartwell appears to claim that the summary judgment is invalid because the notice of the hearing on the amended motion was given by a letter and not by a document with a certificate of service. As we have noted, Hartwell did not appeal the granting of the summary judgment. Thus, he is attempting to collaterally attack the failure to give adequate notice of the summary-judgment hearing. *See Alderson v. Alderson*, 352 S.W.3d 875, 879 (Tex. App.—Dallas 2011, pet. denied) (holding that when appellant argued that a due-process violation had occurred because of lack of notice of the summary-judgment hearing, such argument failed because nothing on the face of the judgment showed that it was void due to the trial court's lacking jurisdiction over the parties or the claims or lacking the capacity to act as a court). Hartwell makes no argument that the face of the summary-judgment order reveals any jurisdictional defect that would render it void.

Even if we were to reach its merits, the argument would fail. Inadequacy of notice, rather than lack of notice of a summary-judgment hearing, requires a party to bring the defect to the trial court's attention before the hearing. *Garrick v. Autoliv ASP, Inc.*, No. 14-17-00818-CV, 2018 WL 3385159, at *2–3 (Tex. App.—Houston [14th Dist.] July 12, 2018, pet. denied) (mem. op.) ("Under our error-preservation rules, [the summary-judgment respondent] was required to bring the notice defects to the specific attention of the trial court before the summary-judgment hearing."). In the two motions to vacate filed by counsel who represented Hartwell during the pendency of the summary-judgment motion, counsel's allegation is not that she was unaware of the summary-judgment hearing but that she did not believe that a response was required. The motions do not state that counsel did not receive notice but that "[c]ounsel for Defendant did not file a response due to no response from the Defendant and the understanding that the Defendant was filing bankruptcy[, and]

We overrule Hartwell's first point claiming that the trial court's summary-judgment order is not a final judgment.[8]

therefore no response was needed." Thus, even if Hartwell had raised the issue on appeal, it appears that it would have been waived.

[8]Because of our disposition, we do not reach Fundworks's argument that even if the summary judgment recited the wrong motion, it was erroneous but was still final and should have been appealed. *See generally* Tex. R. App. P. 47.1. Indeed, most of Hartwell's reply brief responds to this argument. The premise of this discussion is found in the following quote from the reply brief:

> The question [Fundworks] does not answer or even attempt to answer in [Fundworks's] Brief: How can the MSJ which has been superseded and hence does not exist, as a matter of law, with case law characterizing it as a nullity, meaning it is void and of no legal force or effect, "actually dispose" of any claims or parties, including with respect to [Fundworks]?

Again, the premise of the argument is that the trial court's summary judgment granted the first summary-judgment motion that Fundworks had filed—a premise that we reject.

Also, if we are interpreting the reply brief correctly, Hartwell further argues that an attorney's fee claim remains unresolved because the answer originally filed by HHH and Hartwell contained a prayer that sought attorney's fees as follows: "Defendant [sic] prays this [c]ourt, after notice and hearing or trial, enters judgment in favor of Defendant [sic], awards Defendant [sic] the costs of court, attorney's fees, and such other and further relief as Defendant (sic) may be entitled to in law or in equity."

If we coax the argument out of what Hartwell claims—that HHH had a fee claim that was viable after Fundworks's nonsuit of it and that was not disposed of in the summary-judgment order—we are presented with another premise that we reject. A general prayer for the recovery of an attorney's fee is not sufficient to raise a claim because a fee claim contained in a general claim for relief will not support the award of fees. *Berry v. New Gainesville Livestock Auction, LLC*, No. 02-19-00476-CV, 2022 WL 123214, at *7 (Tex. App.—Fort Worth Jan. 13, 2022, no pet.) (mem. op.). Thus, there was never a viable fee claim that could theoretically survive the nonsuit.

13

**B.**   **Our rejection of Hartwell's first point prompts the rejection of his second and third points.**

Hartwell's second and third points are predicated on the argument that a precondition to relief under Texas Civil Practice and Remedies Code Section 31.002—the turnover statute—is a final judgment. We have rejected the argument that the summary-judgment order is not final. Thus, the second and third points fail as well.

We overrule Hartwell's second and third points.

**C.**   **We set forth our reasons regarding why we reject Hartwell's fourth point.**

In his fourth point, Hartwell argues that the trial court erred by appointing a receiver but not requiring the receiver to post a bond.[9] To support this argument, he relies on the Rule of Civil Procedure and the provision of the Civil Practice and Remedies Code generally providing that a receiver shall post a bond. In response, Fundworks cites several cases holding that no bond is required of a turnover receiver

---

Hartwell makes a second argument that we also find hard to follow. Hartwell may also argue that Fundworks's live pleading must be read to assert a claim against the nonsuited HHH because it has two typos referring to "defendants." How this pleading asserted a claim against the nonsuited HHH when it is never referred to as a defendant in this pleading is left unexplained.

[9]Fundworks argues that Hartwell waived his argument about the order's provisions. It appears that the parties litigated at least the question of the necessity of a bond before the trial court. Further, it appears that the trial court could not later approve the receiver's fees without determining their reasonableness. *See Klinek v. LuxeYard, Inc.*, 672 S.W.3d 830, 841–42 (Tex. App.—Houston [14th Dist.] 2023, no pet.). For these reasons, we address Hartwell's fourth and fifth points on the merits.

and notes that the form order, which was approved by the Texas Supreme Court pursuant to a recently promulgated Rule of Civil Procedure that deals with turnovers, includes an option that no bond will be required of a turnover receiver. We conclude that no bond is required.

Undoubtedly, the governing Rule of Civil Procedure and the statute generally governing the appointment of a receiver require the receiver to post a bond.[10] But for almost forty years, the appellate courts have viewed a turnover receiver to be of a different character than the normal receiver. *See Childre v. Great Sw. Life Ins. Co.*, 700

---

[10]Rule 695a provides,

> No receiver shall be appointed with authority to take charge of property until the party applying therefor has filed with the clerk of the court a good and sufficient bond, to be approved by such clerk, payable to the defendant in the amount fixed by the court, conditioned for the payment of all damages and cost in such suit, in case it should be decided that such receiver was wrongfully appointed to take charge of such property. The amount of such bond shall be fixed at a sum sufficient to cover all such probable damages and costs.

Tex. R. Civ. P. 695a. And Section 64.023 of the Civil Practice and Remedies Code provides that

> [b]efore a person assumes the duties of a receiver, he must execute a good and sufficient bond that is:
>
> (1) approved by the appointing court;
>
> (2) in an amount fixed by the court; and
>
> (3) conditioned on faithful discharge of his duties as receiver in the named action and obedience to the orders of the court.

Tex. Civ. Prac. & Rem Code Ann. § 64.023.

15

S.W.2d 284, 289 (Tex. App.—Dallas 1985, no writ). For this reason, a trial court has the discretion to not require a turnover receiver to post a bond. *Childre*, which was the first court to make this holding, cited Judge David Hittner's *Texas Bar Journal* article that made the distinction between a normal receiver and a turnover receiver:

> Judge Hittner's article addressed the need for a bond in the event of the appointment of a receiver under the [t]urnover [s]tatute[,] stating [that]
>
> > [t]here is a strong view that since the underlying obligation has been determined by final judgment, the judgment debtor will not be harmed if no bond, or merely a nominal bond, is required. Any bond which may be required should be carefully framed so as not to indemnify the judgment debtor in the traditional sense, as the righteousness of the appointment should have been fully litigated in any hearing pursuant to the new statutes. The only possible theory on which a bond could be required is to indemnify the receiver for claims that might be asserted against him. It may be argued that the acts of the receiver could be wrongful and malicious, and thus the defendant in judgment should have a bond in his favor to indemnify him against such an eventuality. Of course, the court will maintain control over the activities of the receiver's authority. Thus, unless the judgment debtor comes forward at a hearing on an application pursuant to these statutes and shows extraordinary circumstances, any bond required should not be in an amount that would act as a prohibitive cost or make it economically impossible for the judgment creditor to use the remedies provided for in these statutes for even the smallest of judgments.

*Id.* (citing David Hittner, *Texas Post[j]udgment Turnover and Receivership Statutes*, 45 Tex. B.J. 417, 420 (1982)); *see also Holland v. Alker*, No. 01-05-00666-CV, 2006 WL 1041785, at *8 (Tex. App.—Houston [1st Dist.] Apr. 20, 2006, pet. denied) (mem. op.) ("Because the underlying obligation has been determined by final judgment, the

16

judgment debtor will not be harmed if no bond is required."); *Estate of Herring*, 983 S.W.2d 61, 64 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.) ("However, the bond requirements of Rule 695a do not apply to the appointment of a post[]judgment receiver under the separate authority of the turnover statute, under which the decision as to whether a bond is necessary falls within the discretion of the trial court."); *Schultz v. Cadle Co.*, 825 S.W.2d 151, 154–55 (Tex. App.—Dallas 1992) (holding that turnover statute does not follow requirements of provisions dealing with general appointment of receivers and following *Childre*'s holding that it is the judgment debtor's burden to show that failure to require a bond was an abuse of discretion), *writ denied*, 852 S.W.2d 499 (Tex. 1993).

Further, as Fundworks notes, recently promulgated Rule of Civil Procedure 679a(b) provides that "[a] court that issues an order appointing a receiver under [S]ection 31.002 of the Civil Practice and Remedies Code to collect a judgment owed by an individual judgment debtor may use the Order Appointing Receiver approved by the Supreme Court." Tex. R. Civ. P. 679a(b). The form approved as envisioned by Rule 679a provides the following options, one of which is not to require a bond of a turnover receiver:

Receiver's Bond:

[]      No bond required; or

[]      Receiver must execute a good and sufficient bond in the amount
        of $_____ before acting under this Order.

17

*See* Supreme Court of Texas, Final Approval of Amendments to Texas Rules of Civil Procedure 306a, 503, 505, 508, 509, 510, 663a, and 664a; of Texas Rules of Civil Procedure 679a and 679b; and of a Form Notice of Protected Property Rights, Instructions for Protected Property Claim Form, Protected Property Claim Form, and a Form Order Appointing Receiver, Misc. Docket No. 22-9031 (Apr. 25, 2022), *available at* https://txcourts.gov/media/1454134/form-receiver-order.pdf. We agree with Fundworks that the terms of the form promulgated by the Texas Supreme Court validate a conclusion that there is no hard and fast requirement that a turnover receiver post a bond.

If we understand Hartwell's argument, it is that the cases cited for the proposition that a turnover receiver is not required to post a bond do not apply here because there is not a final judgment, and thus the precondition for a turnover does not exist. We have already rejected this premise and therefore reject this argument.

Hartwell also argues in his reply brief that because Rule 695a requires a bond from a receiver not appointed as a turnover receiver and because Section 31.002 of the Civil Practice and Remedies Code does not exempt the receiver from that requirement, the bond requirement must apply to a turnover receiver. Hartwell's only argument against the logic of *Herring*—cited by Fundworks—is that it was wrongly

18

decided, but he does not challenge its rationale or that of the cases it cites. 983 S.W.2d at 64. We will follow the line of authority of which *Herring* is a part.[11]

Hartwell makes no argument that any extraordinary circumstance prompted a need for the turnover receiver to post a bond. Thus, it was not an abuse of discretion that no bond was required. We overrule Hartwell's fourth point that the trial court abused its discretion by failing to require the turnover receiver to post a bond.

### D. We set forth our reasons regarding why we sustain Hartwell's fifth point but remedy the error by modifying the trial court's order.

In his fifth point, Hartwell argues that the order appointing the receiver sets his fee at 25% of all proceeds coming into his possession without providing for a future determination regarding whether the fee is reasonable. Hartwell argues that a "flat" fee is error, and we agree. To remedy the error, we will modify the order in accordance with the Texas Supreme Court's form order appointing a receiver.

---

[11]Hartwell also argues that the absence of a bond requirement in the form adopted by the Texas Supreme Court for the appointment of a turnover receiver under Texas Rule of Civil Procedure 679a(b) is of no consequence:

> But the weakest argument by [Fundworks] is focusing on Rule 679a(b). What does an order under Rule 679a(b), which relates to the form of the order permitted to be used to appoint a receiver, have to do with the applicant's bond required by the applicant before any receiver is appointed except in a divorce case? Surely the Texas Supreme Court is presumed to know that Rule 695a exists, what it requires, what it says (no receiver), and could have expressly exempted or waived its applicability in Rule 679a(b).

We reject this argument.

The order here provides that

> IT IS FURTHER ORDERED the Receiver's fee and expenses of carrying out his duties are taxed as costs against the Defendant; the Receiver's fee is twenty-five percent (25%) of all proceeds coming into his possession which the Court finds is the customary and usual fee for a Turnover Receiver; and to distribute all remaining proceeds to the attorney for the Plaintiff.

The order does not make the fee subject to future review to ensure that it is reasonable in light of the work actually done by the receiver.

The Fourteenth Court of Appeals recently explained that a fee provision in a turnover receivership order that sets a blanket receiver's fee is error because the trial court has not yet determined that a fee in such an amount is warranted by the work done by the receiver or that the fee is reasonable in light of what work is later done:

> [Appellant] asserts [that] the trial court abused its discretion by setting the receiver's fee without any evidence of reasonableness. The turnover statute authorizes recovery of reasonable costs in a turnover proceeding. *See* Tex. Civ. Prac. & Rem. Code [Ann.] § 31.002(e). A receiver's fees are considered court costs, and a trial court may award reasonable receiver's fees. *Vaccaro v. Raymond James & Assocs.*, 655 S.W.3d 485, 490 (Tex. App.—Fort Worth 2022, no pet.). Whether a receiver's fee is reasonable is determined by the value of the receiver's services, including the receiver's results. *See Moyer v. Moyer*, 183 S.W.3d 48, 57 (Tex. App.—Austin 2005, no pet.) (citing *Bergeron*[ *v. Sessions*], 561 S.W.2d [551,] 553 [(Tex. App.—Dallas 1977, writ ref'd n.r.e.)]; *B.B.M.M., Ltd. v. Tex. Comm*[.] *Bank-Chem.*, 777 S.W.2d 193, 198 (Tex. App.—Houston [14th Dist.] 1989, no [writ])); *see also Congleton v. Shoemaker*, Nos. 09-11-00453-CV, 09-11-00654-CV, 2012 WL 1249406, at *5 (Tex. App.—Beaumont Apr. 12, 2012, pet. denied) (mem. op.).
>
> The turnover order provides the following regarding receiver's fees:
>
> > [I]t is hereby ordered that Receiver pay himself as receiver's fees an amount equal to twenty-five percent of all proceeds

coming into his possession, which the court finds is [a] fair, reasonable, and necessary fee for the Receiver, and is further directed and authorized to pay Applicants' attorney as Trustee for the Applicants the remaining 75% of all proceeds coming into Receiver's possession. No receiver's fee exceeding 25% of all proceeds coming into his possession shall be paid to the Receiver unless an application is filed with and approved by this court with notice and opportunity for hearing granted for Applicant[s] and Respondent.

The plain language of the order indicates that at the time the order was signed, the court made a final determination that a twenty-five percent fee would be reasonable. *See Moyer*, 183 S.W.3d at 57.

However, there must be some evidence in the record to establish the reasonableness of the fee at the time a fee is awarded. *See Congleton*, 2012 WL 1249406, at *5; *Moyer*, 183 S.W.3d at 58. [Appellee] requested receiver's fees in the motion for turnover relief and attached [the proposed receiver's] r[é]sum[é]. However, [appellee] presented no other evidence on the relevant factors. Prior to the order granting turnover relief and appointing a receiver, [the proposed receiver] had not performed any receivership work. At this early stage in the turnover proceedings, the record contains no evidence establishing what percentage or amount constitutes a fair, reasonable, or necessary receiver's fee, such as the complexity and difficulty of the work the receiver performed, the time spent, the diligence or thoroughness displayed, or the results accomplished. *E.g.*, *Allstate Cnty. Mut. Ins. Co.*[ *v. Hill*, No. 02-22-00261-CV], 2023 WL 3113951, at *4 [(Tex. App.—Fort Worth Apr. 27, 2023, no pet.) (mem. op.)] (citing *Bergeron*, 561 S.W.2d at 554). Without this evidence yet available, the trial court abused its discretion by setting the receiver's fee at a blanket twenty-five percent. *Accord Congleton*, 2012 WL 1249406, at *5; *Moyer*, 183 S.W.3d at 57–58.

*Klinek*, 672 S.W.3d at 841–42 (footnote omitted). For the same reasons as those set out in *Klinek*, we conclude that it was error for the trial court to render an order prejudging that a flat and untested fee of 25% of all proceeds coming into the receiver's possession was appropriate.

21

But rather than remand for the trial court to correct its error, we will remedy it ourselves. In accordance with Fundworks's suggestion, we will modify the trial court's order to include a properly phrased fee provision. *See* Tex. R. App. P. 43.3 ("When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when[] (a) a remand is necessary for further proceedings[] or (b) the interests of justice require a remand for another trial."). The form order appointing receiver promulgated by the Supreme Court of Texas includes the following fee provision:

> Receiver's Fee: Receiver's fee is conditionally set at _____% of the funds collected during the receivership, subject to the Judgment Debtor's written agreement or later determination of reasonableness based on written agreement of the Judgment Debtor or proof of the work performed and the results obtained. The court-approved fee will be taxed as costs against Judgment Debtor, and Receiver may collect that fee from Judgment Debtor in addition to the amount collected to satisfy the judgment.

*See* Supreme Court of Texas, Final Approval of Amendments to Texas Rules of Civil Procedure 306a, 503, 505, 508, 509, 510, 663a, and 664a; of Texas Rules of Civil Procedure 679a and 679b; and of a Form Notice of Protected Property Rights, Instructions for Protected Property Claim Form, Protected Property Claim Form, and a Form Order Appointing Receiver, Misc. Docket No. 22-9031 (Apr. 25, 2022), *available at* https://txcourts.gov/media/1454134/form-receiver-order.pdf. We therefore modify the fee provision contained on pages 5 and 6 of the trial court's February 14, 2023 order to read:

IT IS FURTHER ORDERED that the Receiver's fee is conditionally set at 25% of the funds collected during the receivership, subject to the Defendant's written agreement or later determination of reasonableness based on written agreement of the Defendant or proof of the work performed and the results obtained. The court-approved fee will be taxed as costs against the Defendant, and the Receiver may collect that fee from the Defendant in addition to the amount collected to satisfy the judgment.[12]

To fully address the order's provisions regarding the receiver's recovery of his costs, we also modify the provision on page 6 of the order, which provides,

IT IS FURTHER ORDERED that any postage, travel expenses, or other expenses and costs reasonably and necessary incurred in carrying out the terms of this Order of the Court shall be taxed against the Defendant as costs, and shall be collected by the Receiver from the Defendant which shall be in addition to those sums and amounts provided for in the judgment.

That provision is modified in accordance with the promulgated form to now read as follows:

IT IS FURTHER ORDERED that the Receiver must provide an accounting or receipts of any reasonable and necessary expenses, including those for storage of any property seized, to the court. Court-approved expenses will be taxed as costs against the Defendant, and the Receiver may collect those expenses from the Defendant in addition to the amount collected to satisfy the judgment.

We sustain Appellant's fifth point only to the extent that we modify the trial court's order as specified above.[13]

---

[12]We substitute the term "Defendant" for the term "Judgment Debtor" as used in the form because the term "Defendant" is the one used in the trial court's order.

[13]Fundworks filed a motion to dismiss Hartwell's appeal based on the assertion that Hartwell has not answered postjudgment discovery or superseded the trial court's

### III. Conclusion

Having overruled Hartwell's' first four points but having sustained his fifth point, we remedy the trial court's error by modifying the February 14, 2023 order as specified above. As modified, we affirm the trial court's order.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: January 4, 2024

---

judgment. Hartwell responded to the motion to dismiss by asserting many of the arguments raised in his brief about the finality of the trial court's summary-judgment order and also raising other issues about service of discovery on him and service of the trial court's order compelling discovery. Our opinion resolves the appellate issues raised by Hartwell. Oversight of the discovery process and sanctions for the refusal to answer discovery are matters best left to the trial court. Accordingly, we deny Fundworks's motion to dismiss.